728 So.2d 544 (1999)
Kenneth HOLLENBACH, PlaintiffAppellant,
v.
Farrell HOLDEN, et al., Defendants Appellees.
No. 98-970.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1999.
Amending Opinion On Rehearing March 15, 1999.
*546 Patrick Bayard McIntire, Edgar Dean Gankendorff, Lafayette, for Kenneth Hollenbach.
Daryl Stewart, et al., for Daryl Stewart, et al.
Aubrey Edward Denton, Lafayette, for Acadiana Hot Oil Service, et al.
BEFORE: YELVERTON, WOODARD, and PICKETT, Judges.
WOODARD, Judge.
This is a breach of contract case. Kenneth and Cynthia Hollenbach (the Hollenbachs) contracted with Daryl Stewart (Stewart) and his company, Spirit Transportation and Communication, Inc., to remove a tank farm and its contents from the Hollenbachs' property. After an oil spill occurred on the property, Stewart and his company abandoned the contract. The Hollenbachs sued for damages and were awarded $7,340.00, pursuant to the delay damages provision of the contract, and attorney's fees of $2,446.67. The trial court denied the Hollenbachs an award for actual damages. The Hollenbachs appeal the trial court's damages award. We affirm in part, and modify in part.

FACTS
On July 8, 1983, the Hollenbachs purchased a twenty-acre tract of land in Vermillion Parish, Louisiana, from Holden Services, Inc., owned by Farrell Holden. The property included a small tank farm, which the Hollenbachs did not want.
The tank farm consisted of several large metal tanks, each of which was used to store hundreds of barrels of oil. The tanks were surrounded by a low "fire wall" made of dirt. The purchase price of the tract was $72,079.00, but $14,000.00 was to be held in escrow until Holden cleaned up the property and removed the tank farm. The money held in escrow would then be released to him.
Holden made some progress in closing two small pits on the property, but he did not remove the tank farm. As of September 16, 1983, it remained on the property. Holden alleged that he needed a substantial portion of the money held in escrow to do the necessary work in removing the tank farm. In exchange for a reduction by $2,000.00 in the purchase price, Hollenbach agreed to allow Holden to have $7,000.00, leaving $5,000.00 in escrow. Holden did work towards cleaning up the property, but a majority of the work remained. On November 4, 1983, Hollenbach agreed to release the remaining $5,000.00 held in escrow to Holden in exchange for Holden's promise to remove the remaining tanks within fourteen business days. Holden did not perform his obligation. At this point, Holden introduced into this situation Daryl Stewart and his company, Spirit Transportation and Communications, Inc.
On February 10, 1984, Stewart and his company executed a contract obligating them to remove all the remaining tanks from the farm, including the contents of the tanks. The contract contained the following relevant clauses:
DARYL STEWART and SPIRIT TRANSPORTATION AND COMMUNICATIONS, INC. agree to and do hereby bind themselves to the removal of all the remaining tanks comprising the tank farm, to include contents of the tanks, miscellaneous hoses and piping, and other paraphernalia associated with the operation of the tank farm. STEWART and SPIRIT further agree to remove the contents of the tanks, along with the water contained within the firewall surrounding the tank farm, by tank truck or other device, off the premises of the HOLLENBACH lands, and into a proper disposal receptacle authorized by the Louisiana Department of Conservation, Waste Disposal Division. Further, STEWART and SPIRIT agree to do the above within 50 days of the date of this agreement.
. . . .
5. FARRELL HOLDEN, HOLDEN SERVICES, INC., DARYL L. STEWART and SPIRIT TRANSPORTATION AND COMMUNICATIONS, INC. further appear and declare that, should they fail to perform according to this agreement, or within the time limits stipulated, that they shall be liable, individually *547 and in solido, in damages to the Hollenbachs, in the amount of U.S. $20.00 per day for each day of nonperformance, in addition to attorney's fees, and any court costs incurred to enforce this agreement.
6. It is specifically understood and agreed by all the parties hereto that all parties shall have the right to specific performance for the enforcement of the rights and obligations assumed under this agreement.
On March 27, 1984, Hollenbach's attorney, Thomas Miller, wrote to Stewart, encouraging him to complete the removal of the tanks within the agreed time limits. About the same time, Stewart and/or Holden retained the services of Acadiana Hot Oil to heat the oil for removal from one of the tanks. During that operation, the tank broke open and began slowly leaking several hundred barrels of oil onto the property. Stewart did not take any steps to remedy the leak but, instead, simply abandoned the contracted work.
Being aware that Stewart had not removed the tanks but unaware of the oil spill which had covered his property, Hollenbach had his attorney issue a demand letter to Stewart on March 30, 1984. Stewart refused to accept delivery of the demand letter. Hollenbach remained unaware of the leak until early April 1984, when the President of Acadiana Hot Oil called upon Hollenbach to report the leak and to offer suggestions about containing it.
Once he became aware of the magnitude of the oil spill, Hollenbach began mitigating the damages. He tried to remedy the situation with rented equipment and laborers hired by the day. After he had done all that he could, he turned to Roy Young, Inc. and finally to Well-Vac, Inc. to complete the clean-up. Hollenbach spent over $35,006.66 in cash in his efforts to clean-up the mess. However, the total clean-up costs exceeded $77,830.27. Well-Vac, Inc.'s invoices totaled $58,501.76, of which Hollenbach could only pay $15,678.15.
As Hollenbach was unable to pay the total costs of the clean-up, Well-Vac, Inc., sued Hollenbach for its expenses and ultimately seized the tract and had it sold at a sheriff's sale to satisfy the demands of Well-Vac, Inc. This was particularly a tragic situation for Hollenbach, as he had used the proceeds from a personal injury settlement to originally purchase the land as an investment for possible development of a subdivision. Hollenbach contends that his total losses, because of Stewart's and his company's failure to perform the contract for removal of the tank farm, totaled $112,666.84. This comprised his investment in the tract, which was seized and sold, and his costs to mitigate the damages to the land from the spill until his cash was completely expended. He does not include in his claim for damages those Well-Vac, Inc., invoices for which the property was sold to satisfy his debt, as this would result in a double recovery.
The case was tried on April 30 and May 1, 1997. The trial court rendered written reasons for judgment on May 28, 1997. The trial court held that the defendants were obligated to remove the tanks and their contents and that they had breached the contract and were responsible for their failure to perform. It further found that the provision in paragraph five of the contract, stipulating damages of $20.00 per day for each day of non-performance, was the stipulation for all damages, pursuant to La.Civ.Code art.2007. The Hollenbachs were not allowed to recover their actual damages. The trial court ruled that the per diem damages continued to accrue until such time as performance became impossible, which the court determined to be when the Hollenbachs lost the property at a Sheriff's sale on April 3, 1985. Thus, the stipulated delay damages amounted to $7,340.00. The trial court awarded attorney's fees of $2,446.67, representing approximately one-third of the delay damages. The Hollenbach's appealed the damage award to this court.

ASSIGNMENTS OF ERROR
The Hollenbachs assert the following as error:
1. The trial court erred in its interpretation of the February 10, 1984 contract when it held that the Hollenbachs were *548 limited to $20.00 per day as damages rather than awarding actual damages together with $20.00 per day as delay damages.
2. The trial court awarded attorneys fees in the amount of $2,446.67, which was one-third of the damages awarded, and such attorneys fees must be increased in proportion to any increase in the amount of damages.

LAW

THE DAMAGES
We agree that the trial court erred in its interpretation of paragraph five of the contract, holding that the Hollenbachs were limited to $20.00 per day as the total damages to which they were entitled, rather than awarding actual damages, together with $20.00 per day as delay damages. The clause simply stipulates that should the defendants "fail to perform according to this agreement, or within the time limits stipulated" of the obligation, delay damages would be assessed. The words "according to this agreement, or" are simply surplus words in this clause, resulting from poor contract draftsmanship, which caused confusion for the trial court in interpreting this contract.
Furthermore, paragraph five of the contract must be interpreted in light of the other provisions of the contract. La.Civ.Code art. 2050; Ducote v. City of Alexandria, 95-1197 (La.App. 3 Cir. 3/6/96); 670 So.2d 1378. Such a restrictive interpretation of paragraph five of the contract in the trial court's decision is not consistent with the primary purpose of the contract, which was to remove the tank farm from the property. The court's interpretation would mean that before the fifty day deadline expired for performance, the Hollenbachs were legally entitled to specific performance of the contract but not damages for delay; after the fifty day time period for performance of the contract had expired, the Hollenbachs' right to seek specific performance of the contract no longer existed under the contract, contrary to paragraph six, but damages for delay would be available. This is an absurd consequence and contrary to La.Civ.Code art. 2046; Amond v. McCabe, 95-0316 (La.12/1/95); 664 So.2d 1183. If a right to specific performance exists under the contract at all; i.e., for the first fifty days as it does under paragraph six, it exists for the remainder of the contract, absent absolutely clear contract language to the contrary. Paragraph five is not so clearly drafted as to result in that interpretation of the contract that specific performance is not required for the entire contract. It is obvious that the parties never intended the stipulated delay damages of paragraph five to be a complete substitute for performance by the defendants.
Additionally, another failing of the trial court's analysis is that it did not recognize that when a contract does not expressly provide for a specific situation, here paragraphs five and six of the contract do not expressly state that the Hollenbachs shall be entitled to actual damages for the defendants' breach of the contract, that our law will recognize that in every contract that there are "implied incidental obligations" that bind the parties. La.Civ.Code art. 2054 states:
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
(Emphasis added.)
The question isdoes our law provide a remedy of damages to an obligee for the failure of an obligor to perform its obligations under a contract? La.Civ.Code art. 1994 states, in part, "An obligor is liable for the damages caused by his failure to perform a conventional obligation." In the everyday business activities of the state's economy, contracts are agreed to by parties who do not expressly provide that if one party violates the contract, the other will be entitled to damages. Notwithstanding, the Civil Code authorizes state courts to award damages in those circumstances, because the law regards the right to damages as "implied in a contract." La.Civ.Code art.2054. Thus, we find that the Hollenbach's right to actual damages *549 under the contract, in addition to the delay damages specified in the contract, is implied in paragraphs five and six of the contract. For the reasons discussed immediately below, such a finding is "necessary for the contract to achieve its purpose." Id.
The trial court's decision means that if the defendants did nothing to remove the tanks, and the Hollenbachs demanded the stipulated damages, the defendants would no longer owe performance of the principle obligation to remove the tanks. In such circumstances, the contract would not be enforceable to achieve its purpose of removal of the tank farm and their contents from the property and is contrary to paragraph six of the contract. Such a result does violence to the principle purpose of the contract, which was the removal of the tank farm from the tract. Accordingly, such an interpretation is improper.
Now, we turn to the determination of the proper award of damages. The trial court held that the Hollenbachs were entitled to delay damages and attorney's fees. We affirm that portion of the opinion that awards delay damages in the amount of $7,340.00. We affirm that the Hollenbachs are entitled to an award of attorney's fees, pursuant to the contract provisions in paragraph five; however, the trial court's award was inadequate, and we modify the award. See the discussion of this issue in the Hollenbach's second assignment of error below.
Regarding the determination of the actual damages to which the Hollenbachs are entitled because of the defendants' deliberate breach of the contract to remove the tank farm and its contents from their property, the civil code provides that damages are to be measured by the loss sustained by the obligee and the profit of which he has been deprived. La.Civ.Code art.1995. An obligor who breaches a contract in good faith is liable only for the damages that were foreseeable at the time the contract was made. La.Civ.Code art.1996. An obligor who breaches a contract in bad faith is liable for all the damages, foreseeable or not, which are a direct consequence of his failure to perform. La.Civ.Code art.1997. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La.Civ.Code art.1999.
Based upon our review of the record, the evidence establishes that the Hollenbachs are entitled to an award for the following damages which directly grew out of the defendants' failure to perform the contract: equipment and fuel, $9,961.44; labor, $2,806.32; payments to Roy Young, Inc., $4,010.34; payments to National Rental, $593.41; payments to Reserve Pits, Inc., $557.00; payments for survey work, $1,400.00; and partial payment to Well Vac, Inc., $15,687.15. These totals represent the money expended by the Hollenbachs to mitigate the damages to the tract because of the defendants' breach of the contract.
The Hollenbachs' total obligation to Well Vac, Inc. was $58,501.76. As discussed above, the Hollenbachs were unable to pay the total because their capital was depleted, resulting in Well Vac, Inc.'s seizure and sale of the tract. Accordingly, the Hollenbachs claim that they are entitled to an award for damages of $77,660.18, representing the value of their investment in the tract, which included the purchase price plus improvements. Clearly, this was not a damage to the Hollenbachs that would have been foreseeable by the parties at the time the contract was executed and thus would not be recoverable if the defendants were in "good faith" at the time of the breach of the contract. However, if the defendants were in "bad faith" at the time they abandoned the contract, this damage would be recoverable as it was a direct consequence of the defendants' failure to perform the contract and resulted from the Hollenbachs' sense of responsibility to clean-up the oil spill on their property,
The evidence in the record establishes that Stewart and his company were in bad faith at the time they breached the contract. They wanted the tanks on the property and had promised to remove them and their contents. When one of the tanks broke and clean-up became more expensive, they simply walked away from the contract, intentionally breaching it. Even worse, they took *550 no steps to contain the oil spill and did not notify the Hollenbachs of the leak. Further, Stewart testified at trial that though he signed the contract, he never had any intention of removing the tanks from the tract. These facts establish that the defendants' conduct was sufficiently intentional and malicious to warrant finding them in bad faith for their breach of the agreement. La.Civ.Code art.1997, Revision Comments1984 (b); see generally, Nesbitt v. Dunn, 28,240 (La.App. 2 Cir. 4/3/96); 672 So.2d 226; Bond v. Broadway, 607 So.2d 865 (La.App. 2 Cir. 1992), writ denied, 612 So.2d 88 (La. 1993).
Oil spills onto the lands of this state are not to be abandoned by those persons responsible for the spill. Once the Hollenbachs were aware of the spill, they had no choice but to clean-up the mess. In acting as responsible citizens to overcome the breach of the contract by the defendants, they lost the property in which they had invested so much of their capital. It would be unreasonable not to conclude that the loss of the tract was not part of "the loss sustained by the obligee." La.Civ.Code art.1995.
We find that because of the defendants' "bad faith" breach of the contract, the Hollenbachs are entitled to an award from this court for the money that was invested in the tract which was lost when the tract was seized and sold to pay the amounts due Well Vac, Inc., to clean-up the oil spill. The Hollenbachs are awarded $77,660.18, in addition to the other actual damage awards discussed above. The total award for actual damages to the Hollenbachs is $112, 666.84. This award of actual damages restores the Hollenbachs to the position that they would have been in had the contract been fully performed by the defendants.

ATTORNEY'S FEES
The Hollenbachs contend that the trial court's award of $2,446.67 in attorney's fees, apparently representing approximately one-third of the trial court's award of $7,340.00 for delay damages, should be increased if this court awards actual damages to them. The record does not contain evidence of the fee agreement between the Hollenbachs and their counsel or any evidence of the time their counsel spent in litigation of this matter. The contract clearly provides in paragraph five that the Hollenbachs would be entitled to attorney's fees to enforce the agreement. The trial court's award is obviously inadequate and could not possibly represent the amount of time expended by their counsel at a reasonable hourly rate of $100.00 per hour to litigate this matter.
In this situation, the attorney's fees damages are insusceptible to determination under this contract and much discretion is left to us "for the reasonable assessment of these damages." La.Civ.Code art.1999; see generally, Ducote, 670 So.2d 1378. Accordingly, we find that the Hollenbachs shall be entitled to an award of $9,000.00 in attorney's fees under this contract for this litigation.

CONCLUSION
The trial court's award of $7,340.00 in delay damages is affirmed. The award of attorney's fees of $2,446.67 is modified to an award of $9,000.00. The judgment is modified, awarding the Hollenbachs actual damages in the amount of $112,666.84. The appellees are cast with the costs of this appeal.
AFFIRMED IN PART AND MODIFIED IN PART.

ON REHEARING
The appellants have petitioned this court for a rehearing of our February 3, 1999 decision concerning the limited issue of our award of $9,000.00 in attorney's fees to them. The appellants contend that the phrase in the opinion which states "the record does not contain evidence of the fee agreement between the Hollenbach's and their counsel" is erroneous. They are correct. The fee agreement provided for the appellants to pay a contingency fee of one-third on the total amount recovered to their counsel. The rehearing is granted for the limited purpose of reviewing this issue and correcting our opinion regarding same. Accordingly, we hereby strike the statement quoted above.
The appellants request that we award them one-third of the damages awarded by our opinion or $40,002.28 as attorney's *551 fees in this case, rather than the $9,000.00 we awarded for the trial and appeal. This request is problematic for the following reasons. The appellants' right to an award of attorney's fees arises out of a contract which was executed between them and the appellees. The contract makes no provision for how the attorney's fees are to be determined in the event such an award is to be made. However, implied within the attorney's fee provision of the contract is that the amount of attorney's fees to be determined to be due either party will be reasonable, as equity and Rule 1.5 of the Rules of Professional Conduct require. La.Civ.Code arts.2054 and 2055. Furthermore, regardless of the fee agreement between the appellants and their counsel, this court has the authority to determine the reasonableness of the fee to be awarded as a part of our inherent authority to regulate the practice of law. See generally, Miller and Miller v. Home Ins. Co., 625 So.2d 343 (La.App. 3 Cir. 1993), writ denied, 93-2760 (La.1/7/94); 631 So.2d 451. Considering the factors found in Rule 1.5 of the Rules of Professional Conduct in determining the reasonableness of the fee to be awarded the appellants for having to employ counsel to enforce the contract, we maintain our award of $9,000.00 in attorney's fees originally awarded in the opinion.