985 A.2d 769

**Marjorie R. McMULLEN, Appellant**

v.

**Ronald E. KUTZ, Appellee.**

Supreme Court of Pennsylvania.

Argued May 14, 2008.

Decided Dec. 28, 2009.

Lisa Marie Coyne, Coyne & Coyne, P.C., Camp Hill, for Marjorie R. McMullen.

Karl Ernst Rominger, Rominger & Associates, Carlisle, for Ronald E. Kutz.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, McCAFFERY, JJ.

## *OPINION*

Justice BAER.

We granted review in this case to determine whether a court may consider the reasonableness of attorney fees claimed in a breach of contract action where the contract does not specify that the fees incurred must be reasonable. In the case before us, the parties entered into a marriage and property settlement agreement that provided for the payment of attorney fees and costs incurred by one party in enforcing the contract against the breaching party. The trial court concluded that Appellee Ronald E. Kutz ("Husband") breached the agreement by failing to pay Appellant Marjorie R. McMullen ("Wife") sufficient child support and that the contract provided that the breaching party must pay the attorney fees expended by the non-breaching party. The trial court, however, granted Wife less than half of the attorney fees she claimed to have incurred in litigating her breach of contract action because the court found that the amount claimed was unreasonable in light of the nature of the claim and Wife's failure to seek an out-of-court settlement of the dispute prior to initiating litigation. On appeal to the Superior Court, Wife claimed that the trial court erred in considering the reasonableness of the fees when the contract provided for the full payment of the attorney fees "incurred." A divided Superior Court panel held that the trial court had the inherent duty to consider the reasonableness of a counsel fee award. We

granted allowance of appeal, and, after full and careful consideration of Wife's arguments, affirm the decisions of the trial court and Superior Court, finding that courts may consider reasonableness when making a counsel fee award, regardless of the precise verbiage of the document authorizing such award.

Wife and Husband were married in December 1985 and had five children prior to their divorce. On July 7, 2000, Wife and Husband entered into a Separation and Property Settlement Agreement ("Agreement"), under which Husband conceded that thirty-five percent of "his disposable military pension shall be the sole and exclusive property" of Wife. Agreement at ¶ 9(d). Additionally, Husband agreed to pay Wife $1200 per month as support for the five children until an "Emancipation Event." Agreement at ¶ 12(a). The contractual provision describing an emancipation event relevant to this case states:

Reaching the age eighteen (18); except and provided that an emancipation event shall be deferred beyond the eighteenth birthday of the child if and so long as the child pursues full time college education with reasonable diligence and on a normally continuous basis, and during such time the child lacks sufficient resources to be self-sustaining and is dependent upon his parents for support; but, in this respect, in no event shall emancipation be deferred beyond the child's twenty-first birthday.

Agreement at ¶ 12(c)(1). Significantly, the Agreement also provided that in the event of a breach, the non-breaching party would be entitled to collect the attorney fees incurred in enforcing the Agreement:

If either party breaches any provision of this Agreement, the other party shall have the right, at his or her election, to sue for damages for such breach or seek such other remedies or relief as may be available to him or her, and the party breaching this contract shall be responsible for payment of legal fees and costs incurred by the other in enforcing their rights under this Agreement.

Agreement at ¶ 17. The Agreement did not require the non-breaching party to attempt to settle the claim prior to initiating suit, nor did it explicitly provide that the fees incurred must be reasonable.

In September 2005, Wife filed a petition to enforce the Agreement alleging that Husband had breached it by failing to pay support for their eldest son during July and August 2005, following his graduation from high school, and for failing to pay Wife her full share of the military pension due. Although not relevant to our inquiry, the discrepancy resulted when Husband interpreted the Agreement as permitting him to cease payment of child support for his oldest son during the summer between his high school graduation and the beginning of college, despite the son's uncontested intent to enroll in college in the fall. Additionally, during the first few months of Husband's retirement, Husband paid to Wife 35% of Husband's *net* retirement check. At some point thereafter, the Defense Finance and Accounting Service (DFAS) began to pay Wife directly, and paid her 35% of his *gross* retirement check. Wife asserted that she was entitled to the child support for the months between the parties' eldest son's high school graduation and his enrollment in college, and the discrepancy in the calculation of her percentage of his retirement checks. The trial court found for Wife on both issues in December of 2005, and later explained its ruling: "While [Husband's] uncounseled interpretation of the [Agreement] was reasonable, we found that it was also erroneous." Tr. Ct. Op. at 2. The court, thus, calculated the amount owed by Husband to Wife as $792.12 in unpaid retirement benefits and unpaid child support.

Based upon the trial court's determination, there was no dispute that Husband breached the agreement, thus triggering the assessment of Wife's counsel fees against Husband. The court, in considering the imposition of counsel fees, refused to grant Wife the $3000 of fees she claimed. The court noted the following in this regard:

We did not, however, feel that it was reasonable for [Wife] to incur almost $3000 in legal fees to litigate this

matter. We note that there was no attempt by her counsel to resolve these issues short of involving the courts. Counsel's first contact with [Husband] in connection with these matters was a letter which accompanied the "Petition to Enforce." The letter demanded payment of all sums due **plus counsel fees.** However, there was no breakdown of what sums were due, or the counsel fees being claimed.

The issues involved in this case were simple and straightforward. Further, the record is devoid of any attempt by [Wife], or her counsel, to resolve the issues or to keep counsel fees reasonable. Under those circumstances, we felt the award of $1200 for counsel fees (about 1.5 times the amount awarded for the underlying dispute) was reasonable.

Trial Court Opinion at 2 (internal footnote omitted, emphasis in original).

Wife appealed to the Superior Court urging that the trial court erred in considering the reasonableness of the attorney fees when the Agreement, signed by the parties, granted the non-breaching party the fees "incurred" without any qualification regarding the reasonableness of the fees. Wife argued that the decision should be controlled by the Superior Court's decision in *Creeks v. Creeks*, 422 Pa.Super. 432, 619 A.2d 754 (1993). It is unclear to us why Wife views *Creeks* as controlling. In that case, the principal dispute concerned whether a party had, in fact, breached an agreement. The Superior Court concluded that the party had breached the applicable contract, and premised thereon, reversed the trial court's denial of attorney fees. The court in *Creeks*, however, did not address the reasonableness of the fees. Moreover, unlike the case at bar, the agreement in *Creeks* contained a clause specifically addressing the reasonableness of the potential attorney fees: "the prevailing party in such proceedings shall be entitled to an award of counsel fees for all time *reasonably* expended in connection with the enforcement of this Agreement." *Creeks*, 619 A.2d at 757 (emphasis added). Indeed, the agreement in *Creeks* even stipulated that $100 per hour was a reasonable hourly fee.

608

The Superior Court, in the case at bar, framed the question as whether a court could find a reasonableness requirement to be implicit in a contract. In finding the reasonableness criteria to be implicit, the court relied upon its earlier decision in *Duffy v. Gerst*, 286 Pa.Super. 523, 429 A.2d 645, 650 (1981), holding, "It may be assumed that implicit in this provision is the condition that the attorney's fee must be a reasonable fee." The Superior Court also considered the decisions of our sister state Maryland, which read a reasonable fee term into contracts providing for the recovery of attorney fees in the event of breach. *See Atlantic Contr. & Material Co., Inc. v. Ulico Cas. Co.*, 380 Md. 285, 844 A.2d 460, 478 (2004) ("When a contract entitles a party to recover attorney's fees, the trial court must examine the fee request to determine whether it is reasonable even in the absence of a provision requiring that the fee request be reasonable.").

The Superior Court additionally concluded that the trial court properly considered Wife's counsel's failure to seek settlement when the court weighed the reasonableness of counsel's fees. Ultimately, the Superior Court held that the trial court did not abuse its discretion in reducing the amount claimed in counsel fees after finding the fees sought to be unreasonable.

Judge Colville wrote in dissent. He agreed with the panel majority that reasonableness was an implicit component to the fee provision of the Agreement, but opined that a court may not evaluate the reasonableness of the fee unless a party contested that factor, whereas the panel majority stated that a trial court "must" consider the reasonableness of the fee. *McMullen v. Kutz*, 925 A.2d 832, 836 n. 5 (Colville, J., dissenting). The dissent also found fault with the trial court's finding that the fee was unreasonable based upon Wife's counsel's failure to seek settlement: "Whether [Wife] attempted to settle this matter short of litigation simply is not a factor to be considered by a court in assessing the reasonableness of attorney's fees. Furthermore, the parties' agreement did not require that [Wife] attempt to settle her dispute with [Husband] before involving the courts." *Id.* at 837. The dissent

opined that the better resolution would have been to remand the case to the trial court for further assessment of the reasonableness of the fees.

■■■ We granted Wife's petition for allowance of appeal to consider whether reasonableness is an implicit term in a contractual provision awarding attorney fees for a breach of contract.[1] We note that the interpretation of the terms of a contract is a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *Chen v. Chen*, 586 Pa. 297, 893 A.2d 87, 93 (2006).

Wife observes that a court cannot rewrite a contract but instead must interpret the contract as written. She quotes the Superior Court's decision in *Creeks* for the standard of law that a court cannot modify the terms of a contract under the guise of interpretation because the written terms are the best indication of the parties' intent. *Creeks*, 619 A.2d at 756. She

1. Specifically, the question phrased for our review provided:
   Should this Court grant this petition for allowance of appeal when the decision by the Superior Court in this case is in conflict with the decisions of the Superior Court in both *Creeks v. Creeks*, 422 Pa.Super. 432, 619 A.2d 754 (1993) and *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa.Super.2002)?
   *McMullen v. Kutz*, 594 Pa. 57, 934 A.2d 1162 (2007). We respectfully disagree with the dissent's interpretation of this question. Instead, we take a broader view of the arguably poorly worded question presented to us in Appellant's Petition for Allowance of Appeal. Obviously, we did not grant review to determine whether the Court "should . . . grant this petition" as the question is literally phrased, and we recognize that the dissent does not so claim. Additionally, however, we did not grant review, as the dissent would suggest, to decide the very limited question of whether the Superior Court's decision in the case sub judice conflicts with prior decisions of that court. Our Rules of Appellate Procedure provide that we grant review "only when there are special and important reasons therefor." Pa.R.A.P. 1114. While our Internal Operating Procedures § 5(A)(1) provides for granting review where "the holding of the intermediate appellate court conflicts with another intermediate appellate court opinion," there would be no special or important reason to draft an opinion that holds merely that a Superior Court decision does or does not conflict with prior precedent of that court unless we then clarified for the bench and bar the correct rule of law in the explored area. Accordingly, we conclude that the question granted extended to whether the decision below, finding that the trial court was authorized to consider the reasonableness of attorney fees, was correct, and we conclude further that it was for the reasons set forth in this Opinion.

argues that the plain language of the Agreement provides that the "party breaching this contract shall be responsible for payment of legal fees and costs incurred by the other in enforcing their rights under this Agreement," Agreement at ¶ 17. She contends that the lower courts impermissibly inserted a reasonableness term into the contract, when the plain language of the contract provides the non-breaching party with the total fees "incurred." Wife urges this Court to reverse the decisions of the courts below, which she claims destroys the bargained-for exchange of the parties:

> It was obviously created so that the parties could avoid the additional cost and burden on the non-breaching spouse of litigating the issue of attorney's fees, expenses, and costs in court. However, the failure of the trial court to adhere to the plain language of the contract resulted in just that.

Brief for Appellant at 13.

Assuming *arguendo* that we hold reasonableness to be implicit in the attorney fee provision, Wife also faults the trial court for raising the issue *sua sponte,* failing to hold hearings to ascertain whether the fees were in fact reasonable, and for not considering pre-established standards of reasonableness. Wife asserts that the trial court should have held hearings to consider the reasonableness of the attorney fees in accord with the factors set forth by this Court in *In re Estate of LaRocca,* 431 Pa. 542, 246 A.2d 337 (1968):

> The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* at 339; *see also Estate of Murray v. Love,* 411 Pa.Super. 618, 602 A.2d 366, 370 (1992). Additionally, she argues that the fees were reasonable because Husband contested the merits of Wife's petition. Moreover, Wife notes that the factor cited by the trial court to justify the reduction in the fees was the failure of counsel to seek settlement. Wife asserts that this is an improper factor under our caselaw which provides that "an offer to compromise a claim, not accepted, cannot be introduced into evidence," quoting *Durant v. McKelvey,* 187 Pa.Super. 461, 144 A.2d 527, 529 (1958) and citing *Danks v. Government Employees Insurance Co.,* 307 Pa.Super. 421, 453 A.2d 655, 657 (1982) (holding that offers of settlement and compromise were not admissible to show that the amount of time spent by attorneys was unreasonable).

Accordingly, Wife urges the Court to remand to the trial court to enter an order granting Wife all the fees incurred, or in the alternative, to remand with an order that the trial court take evidence regarding the factors set forth above relating to the reasonableness of the fees actually incurred by Wife's counsel.

In countering Wife's arguments, Husband addresses the two cases cited in the grant of review by this Court, *supra* note 2. He contends that *Profit Wize Marketing v. Wiest,* 812 A.2d 1270 (Pa.Super.2002), and *Creeks* are not inconsistent with the decision of the Superior Court in the case at bar. He notes that neither cited decision involved the question of whether reasonableness is an implicit factor to be considered in the award of attorney fees for breach of contract. Husband notes that *Profit Wize Marketing* turned on a determination of which party had prevailed. When the Superior Court concluded that neither party had prevailed, and thus that neither party could be granted attorney fees, it did not need to address the reasonableness of the fees allegedly incurred.

Similarly, Husband asserts that *Creeks* is neither inconsistent nor relevant to the issues in this case. Rather than addressing whether reasonableness can be an implicit criterion in the award of legal fees, the Superior Court in *Creeks* considered a contract where reasonableness was a stated

criterion for the award of fees. Indeed the contentious issue in *Creeks* did not hinge on the reasonableness of the award but rather, on whether the contract had been breached. Finding a breach of the contract, the Superior Court remanded for determination of the reasonableness of the fees.

Given the lack of on-point precedent, Husband next addresses whether courts must consider the reasonableness of the claimed attorney fees even where the contract is silent on reasonableness of the fees. Husband contends that public policy supports the incorporation of a reasonableness inquiry. He claims that reasonableness is implicit because Pennsylvania courts have inherent supervisory authority over attorneys and thus have the power to rule on the reasonableness of any attorney fee. Second, Husband contends that to refuse to read reasonableness into every provision for attorney fees could place courts in the untenable situation of being forced to award a "clearly excessive or scandalous" attorney fee. Brief for Husband at 7. Citing *Duffy*, Husband notes that the Superior Court has considered a reasonableness inquiry proper since at least 1981.

For the reasons discussed above, we agree with Husband that a trial court's consideration of the reasonableness of the attorney fees claimed does not conflict with the prior decisions of the Superior Court in *Profit Wize Marketing* and *Creeks*. In neither case did the Superior Court consider whether reasonableness could be an implied factor in determining an award of attorney fees in the event of a breach of contract. The cases support Wife's theory only to the extent that they stand for the general proposition that courts are bound by the plain language of a contract as the best evidence of the intent of the parties.

Next, we must consider whether courts can find that contractual provisions for the shifting of attorney fees implicitly require that the claimed fees be reasonable, despite the lack of specific language, and thus, whether courts have the authority, and perhaps the obligation, to inquire into the reasonableness of the attorney fees claimed. "The general rule within

this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." *Lucchino v. Commonwealth,* 570 Pa. 277, 809 A.2d 264, 267 (2002). This so-called "American Rule" holds true "unless there is express statutory authorization, a clear agreement of the parties or some other established exception." *Mosaica Academy Charter School v. Com. Dept. of Educ.,* 572 Pa. 191, 813 A.2d 813, 822 (2002). As in similar fee-shifting provisions, the Agreement in this case contained the necessary "clear agreement of the parties" that in the event of a breach of the Agreement, the breaching party must pay the attorney fees "incurred" by the non-breaching party in enforcing the Agreement. There is no dispute that Husband was the breaching party, and thus, that Wife was entitled to attorney fees incurred in enforcing the Agreement against Husband.

The dispute in this case concerns the trial court's authority to address the reasonableness of the attorney fees claimed. Wife, and a minority of courts across the country,[2] would read the plain language of the contract to require any and all fees incurred by the non-breaching party to be payable by the breaching party. We cannot accept this reading, however, because the potential for abuse is too high. If we were to forbid a reasonableness inquiry by a trial court, there would be no safety valve and courts would be required to award attorney fees even when such fees are clearly excessive.

Instead, we join the majority of our sister states[3] in finding that parties may contract to provide for the breaching

2. *See, e.g., Carter v. Warren Five Cents Sav. Bank,* 409 Mass. 73, 564 N.E.2d 579, 583 (1991) ("The agreement was to pay attorney's fees Carter incurred in pursuing his rights. The agreement was not to pay Carter's reasonable attorney's fees as determined by a judge."); *Turner v. Terry,* 799 So.2d 25, 38 (Miss.2001) (holding prevailing party is "entitled to all attorneys' fees resulting from this litigation, as a plain reading of the contract provides"); *Lee v. Investors Title Co.,* 241 S.W.3d 366, 368 (Mo.Ct.App.2007) ("The decision to award attorney's fees is not a matter of discretion in this situation and failure to do so is erroneous.")

3. *See, e.g., Alabama Educ. Ass'n v. Black,* 752 So.2d 514, 519 (Ala.Civ. App.1999) ("In Alabama, where there is an agreement to pay an

attorney fee and the agreement does not speak specifically to the reasonableness of the fee, a "reasonable" fee will be inferred."); *McDowell Mountain Ranch Community Ass'n, Inc. v. Simons*, 216 Ariz. 266, 165 P.3d 667, 671 (Ariz.Ct.App.2007) (collecting cases and stating: "Notwithstanding the general rule that attorneys' fees are enforced in accordance with the terms of a contract, a contractual provision providing for an award of unreasonable attorneys' fees will not be enforced."); *Griffin v. First Nat. Bank of Crossett*, 318 Ark. 848, 888 S.W.2d 306, 311 (1994) ("Implicit in our holding is a requirement that any attorney's fees awarded should be reasonable."); *Crest Plumbing and Heating Co. v. DiLoreto*, 12 Conn.App. 468, 531 A.2d 177, 183 (1987) ("We construe the term 'attorney's fees' as an award for '*reasonable* attorney's fees' in this case because the term '*reasonable*' is implied by law even when it is absent in the contractual provision.") (emphasis in original); *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242, 245–46 (Del.2007) ("Delaware law dictates that, in fee shifting cases, a judge determine[s] whether the fees requested are reasonable."); *Concord Enterprises, Inc. v. Binder*, 710 A.2d 219, 225 (D.C.1998) ("[W]here a contractual agreement expressly provides for the payment of attorney's fees, the trial court's discretion is limited to ascertaining what amount constitutes a 'reasonable' fee award."); *Dunn v. Sentry Ins.*, 462 So.2d 107, 108 (Fla.Dist.Ct. App.1985) (holding that a prevailing party is not entitled to recover the total amount which it has paid or agreed to pay if that amount is excessive or unreasonable); *Lettunich v. Lettunich*, 141 Idaho 425, 111 P.3d 110, 120 (2005) (providing for trial courts to consider several factors in arriving at a reasonable attorney fee calculation); *Heller Financial, Inc. v. Johns–Byrne Co.*, 264 Ill.App.3d 681, 202 Ill.Dec. 349, 637 N.E.2d 1085, 1092 (1994) ("While the parties may, by a private agreement, override the "American Rule" which holds that each will be responsible for any legal fees they incur in a civil litigation, such contractually-provided fees will be approved by the court only if they are reasonable."); *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 826 (Ind.Ct.App.2005) ("Attorney fees awarded under a contract must be reasonable."); *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007) ("When a written contract allows for the recovery of attorney's fees, the award must be for reasonable attorney's fees."); *Hollenbach v. Holden*, 728 So.2d 544, 551 (La.Ct.App.1999) ("[I]mplied within the attorney's fee provision of the contract is that the amount of attorney's fees to be determined to be due either party will be reasonable."); *Yim K. Cheung v. Wing Ki Wu*, 919 A.2d 619, 625 (Me.2007) ("As a general rule, courts must enforce contract provisions that require the payment of attorney fees, so long as they are reasonable."); *Myers v. Kayhoe*, 391 Md. 188, 892 A.2d 520, 532 (2006) ("Even in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness."); *Zeeland Farm Services, Inc. v. JBL Enterprises, Inc.*, 219 Mich. App. 190, 555 N.W.2d 733, 736 (1996) ("[R]ecovery is limited to reasonable attorney fees."); *State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn.Ct.App.1994) ("Where loan documents authorize a lender to recover legal expenses associated with collection, however, Minnesota courts will enforce the provision as long as the fees are reasonable."); *Belfer v. Merling*, 322 N.J.Super. 124, 730 A.2d 434, 443

party to pay the attorney fees of the prevailing party in a breach of contract case, but that the trial court may consider whether the fees claimed to have been incurred are reasonable, and to reduce the fees claimed if appropriate.

■ While we recognize that our decision herein results in affirming the curtailment of the fees in this case, we emphasize that we render no opinion on whether the attorney fees claimed were, in fact, reasonable, as that issue is not implicitly encompassed in the questioned granted for review. Instead, we hold only that the trial court had the authority to consider the reasonableness of the attorney fees claimed. Accordingly, we affirm the decisions of the Superior Court and the trial court.

(N.J.Super.Ct.App.Div.1999) ("[A]ny fee arrangement is subject to judicial review as to its reasonableness."); *Robison v. Katz*, 94 N.M. 314, 610 P.2d 201, 209 (N.M.Ct.App.1980) ("It is clearly within the equitable power of the court to consider and reduce excessive fees."); *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 986, 825 N.Y.S.2d 80, 81–82 (2006) ("While the plaintiff was entitled to attorneys' fees pursuant to the Note, [a]n award of attorneys' fees pursuant to such a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered.") (internal quotations omitted); *Northwoods Condominium Owners' Ass'n v. Arnold*, 147 Ohio App.3d 343, 770 N.E.2d 627, 630–31 (2002) ("Under Ohio law, contractual provisions awarding attorney fees are enforceable and not void as against public policy so long as the fees awarded are fair, just, and reasonable as determined by the trial court upon full consideration of all the circumstances of the case."); *Benchmark Northwest, Inc. v. Sambhi*, 191 Or.App. 520, 83 P.3d 348, 349 (2004) ("The award is mandatory; the trial court has no discretion to deny it, although it does have discretion as to what amount is 'reasonable.'"); *South Carolina Elec. & Gas Co. v. Hartough*, 375 S.C. 541, 654 S.E.2d 87, 91 (S.C.Ct.App.2007) ("When an award of attorney's fees is based upon a contract between the parties, the determination of the fees is left to the discretion of the trial court and will not be disturbed absent an abuse of discretion."); *Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) ("Where the parties have agreed by contract to the payment of attorney fees, the court may award reasonable fees in accordance with the terms of the parties' agreement."); *Dewey v. Wentland*, 38 P.3d 402, 420 (Wyo.2002) ("Even in the face of a valid contractual provision for attorney's fees, we have clearly stated that a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable.").

Justice TODD did not participate in the consideration or decision of this case.

Justices EAKIN and McCAFFERY join the opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Chief Justice CASTILLE files a dissenting opinion.

Justice SAYLOR, concurring and dissenting.

As the majority recognizes, appeal was allowed on a limited basis, solely to address a purported conflict between the Superior Court's decision in this case and its prior ones in *Creeks v. Creeks*, 422 Pa.Super. 432, 619 A.2d 754 (1993), and *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270 (Pa.Super.2002). The majority aptly determines that there simply is no conflict, and that neither decision has anything to do with a materially distinct question involving the courts' ability to consider reasonableness of attorneys' fees in assessing contractual fee-shifting matters where reasonableness is not a specific term of the agreement. *See* Majority Opinion, at 610–13, 985 A.2d at 774–75. Nevertheless, the majority proceeds, beyond the limited grant of allocatur, to frame and address this extraneous question.

Certainly, the issue is of substantial significance to Pennsylvania jurisprudence and warrants this Court's attention. Nevertheless, I do not believe this case is an appropriate one in which to address the matter. This is so, not only because the question is not within the scope of the issue formally accepted for review, but also because the advocacy presented touches only on a very limited subset of the many considerations relevant to a reasoned development of governing principles.

The overarching subject of allocating attorneys' fees is a difficult one. On the one hand, as the majority observes, courts have settled upon the American Rule as the default approach. *See* Majority Opinion, at 612–13, 985 A.2d at 775–76. However, application of this rule, under which parties must bear their own counsel fees regardless of faultlessness, can act as a restraint on contractual undertakings and/or

discourage prosecution of meritorious actions. Thus, the American Rule is not sacrosanct and can be overridden at least by agreement or statute.

In the context of contractual fee-shifting, there are two strong policies in tension. First, freely negotiated agreements entered into at arms length are generally enforced according to their terms to allow parties the benefit of their bargains. *See generally Snow v. Corsica Constr. Co.*, 459 Pa. 528, 531, 329 A.2d 887, 889 (1974) (explaining that "[i]nadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract." (citation omitted)). When this policy is given priority, faultless parties can be made whole upon breach, according to the terms of their agreements, and the judicial non-interference in contractual affairs fosters certainty and stability in economic relations.[1] *See, e.g., Res. Mgmt. Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1040 (Utah 1985) ("Although courts will not be parties to enforcing flagrantly unjust agreements, it is not for the courts to assume the paternalistic role of declaring that one who has freely bound himself need not perform because the bargain is not favorable."). On the other hand, perhaps on account of unease with shifting costs over which a non-prevailing party had less control, *see, e.g.,* Majority Opinion, at 612–13, 985 A.2d at 775–76, many courts assume a more active role in reviewing contractual fee-shifting. *See, e.g., Home Funding Group, LLC v. Kochmann*, 2008 WL 4298325, at *5 (D.Conn. Sep.18, 2008) (indicating, in the setting of contractual fee-shifting, "attorney's fees should be awarded 'with an eye towards moderation'" (citations omitted)).

As the majority relates, in Pennsylvania, the Superior Court has found an implied reasonableness term in contractual fee-

---

1. Of course, any contractual provision is enforceable according to its terms only to the limits of unconscionability. *See Salley v. Option One Mortgage Corp.*, 592 Pa. 323, 331–32, 925 A.2d 115, 119–20 (2007). Therefore, it is beyond dispute that an unconscionable fee-shifting provision, or a provision yielding unconscionable results, should not be enforced according to its terms. The issue the majority undertakes to address here, however, is whether (and/or to what degree) the courts should engage in a more general reasonableness inquiry regardless of the specific terms of a contract.

shifting provisions. *See McMullen v. Kutz,* 925 A.2d 832, 834 (Pa.Super.2007) (citing *Duffy v. Gerst,* 286 Pa.Super. 523, 531, 429 A.2d 645, 650 (1981)). The underlying decision in *Duffy,* however, is not well reasoned, in that it does not develop the relevant policy considerations. Rather, *Duffy* summarily invoked two decisions which, like those relied upon by Appellant, have little to do with the question of reasonableness in fee-shifting.[2] The Superior Court's *McMullen* decision relies on *Duffy,* which it also compared favorably with the approach of a single other jurisdiction. *See McMullen,* 925 A.2d at 834–35.

The Superior Court did not consider, and the parties do not presently discuss, the approach of a number of jurisdictions which substantially limit the level of judicial scrutiny pertaining to contractual fee-shifting. *See, e.g., Student Mktg. Group, Inc. v. Coll. P'ship, Inc.,* 247 Fed.Appx. 90, 103 (10th Cir.2007) (indicating that a trial court has "far less equitable discretion" in contractual as compared to statutory fee-shifting matters, and "the trial court is not responsible for independently calculating a 'reasonable fee' and should only reject the contractually-stipulated award if it is 'unreasonable or inequitable' " (citations omitted)); *Carpenter Tech. Corp. v. Armco, Inc.,* 808 F.Supp. 408, 410 (E.D.Pa.1992) (suggesting that, under Pennsylvania law, the "duty to scrutinize is less de-

**2.** *Duffy* supported its single-sentence reasoning with citations only to *Kuhn v. Princess Lida of Thurn & Taxis,* 119 F.2d 704 (3d Cir.1941), and *In re Lohm's Estate,* 440 Pa. 268, 269 A.2d 451 (1970). *Kuhn* concerned a suit by an attorney against a former client based on an equitable *quantum meruit* theory, *see Kuhn,* 119 F.2d at 705, circumstances very different from contractual fee-shifting. *Lohm's Estate* involved a claim for counsel fees asserted by an attorney for an estate against the estate, and adjustments reflecting a surcharge. The governing principle of law was stated narrowly as follows: "A court which has been requested to approve an amount of compensation for a fiduciary or his counsel *sua sponte,* may pass upon the reasonableness of the compensation claimed and, where appropriate, impose a surcharge by way of awarding a fee which is less than the customary minimum for an estate that size." *Lohm's Estate,* 440 Pa. at 273–74, 269 A.2d at 454. The *Duffy* court was not justified in relying on either of these decisions for a general proposition of law that reasonableness is an implied term of fee-shifting agreements, because neither supports any such proposition.

manding when an award of counsel fees arises from a bargained-for contract clause rather than from a common fund or statute." (citations omitted)). In my view, such perspectives merit consideration in the reasoned development of our law. Indeed, I find troubling the prospect of Solomonic rulings by courts invested with broad discretion to dilute contractual fee-shifting, and I tend toward more limited judicial involvement.[3]

In this arena, other issues arise. For example, there is a split of authority concerning whether attorneys' fees are merely an element of damages, to be determined by the fact-finder, whether judge or jury, in cases where the right to the fees is created by a contract. *See Murphy v. Stowe Club Highlands*, 171 Vt. 144, 761 A.2d 688, 700 (2000). Moreover, it seems to me the appropriate frame of reference may depend, to some degree, on factors such as whether the contract arises in a consumer or commercial context, the degree of opportunity for arm's length bargaining, and whether fees are liquidated or unliquidated in the agreement.

For the above reasons, I join the majority opinion as it relates to the specific issue on which allocatur was granted, but I do not support its broader analysis and legal conclusions.[4] Instead, I would expressly leave for another day

3. I place the common pleas court's approach in this case within this category of troubling rulings. For example, as Judge Colville develops, the court gave substantial emphasis to its perceptions concerning Appellee's failure to pursue settlement. I agree with Judge Colville that the common pleas court was not justified in considering its finding of an absence of settlement negotiations as a substantial factor in its analysis, *see McMullen*, 925 A.2d at 837 (Colville, J., dissenting), since individuals should not be penalized for exercising their right of access to the courts to enforce their legal interests. Thus, in my view, a remand might be appropriate were this matter within the scope of the limited appeal to this Court.

Additionally, in my view, there are circumstances in which it is reasonable for parties to spend more for attorney services than the amount of their potential recovery in order to secure their rights against others. The alternative is to require parties to surrender their rights merely because enforcing them will be expensive, or to force attorneys to discount or shortcut their services.

4. Although I would not address the matter here, however, I also would not disturb the Superior Court's existing decisions implying reasonableness into contractual fee-shifting terms. Thus, such law would remain

issues concerning the appropriate degree of judicial scrutiny of contractual fee-shifting, as well as the question of whether (and/or under what circumstances) the reasonableness determination should be for a judge or the jurors in jury cases.

Chief Justice CASTILLE, dissenting.

I join the dissenting portion of Mr. Justice Saylor's Concurring and Dissenting Opinion, which ably articulates the deficiencies in the new rule summarily adopted by the Majority. I write separately to elaborate upon those points of disagreement and also to explain why, if we must decide the question the Majority poses, I would reverse the courts below.

The Majority adopts a new rule that adult parties to a contract, even those represented by counsel, cannot agree between themselves that, should one party breach the agreement, the breaching party must pay the non-breaching party's attorney's fees in full. The Majority concludes that courts are authorized to insert a requirement of reasonability of the fees due to the potential for abuse if one party knows the other will be paying the fee. Even if I shared the Majority's cynicism concerning the bar's charging practices, I would not adopt the policy the Majority has adopted to undo arms' length contracts that are a quintessential expression of American free will.

Proper disposition of this appeal requires a proper framing, and there are three points that, I believe, provide necessary perspective. The first point is Justice Saylor's observation that this case is more momentous than the Majority would make it out to be, and the new rule summarily approved is rendered in a case where the briefing is not up to the task. *See* Saylor, J., Concurring and Dissenting Op., at 616, 985 A.2d at 778. The parties' briefs, and particularly appellant's brief, present argument on the above issue but only as a secondary matter, not as the primary argument advanced. Instead, the parties appropriately devoted their arguments to the issue this Court actually agreed to hear regarding the

the prevailing precedent of Pennsylvania unless and until addressed by this Court in a case in which this precedent is meaningfully questioned and the alternatives appropriately explored.

potential conflict between different Superior Court panel decisions. In addition, the order granting allocatur was not framed in a manner to put other potentially interested parties, such as the organized bar, on notice that we might approve a rule which allows trial judges, in their discretion, to take it upon themselves to reduce contractually-based awards of attorneys' fees. And so we are left without the input of the practicing bar—which knows more about the current financial pressures of practicing law than this Court does.

Second, and similarly, the Majority's easy approval of the trial court's *sua sponte* action should not obscure just how intrusive that action was. The Majority apparently credits appellee's argument that reasonableness inquiries are appropriate because Pennsylvania courts have inherent supervisory authority over Pennsylvania attorneys. This Court indeed has such supervisory authority, but the lower courts have that authority, in a matter such as this, only to the extent we have approved it. The trial court here acted without the imprimatur of approval from this Court, and the existing Superior Court authority is, as Justice Saylor has demonstrated, uniquely unreasoned. It is perfectly appropriate for the aggrieved party to seek review of such an action.

Third is the fact, also duly noted by Justice Saylor, that there is already existing protection against unconscionable contract provisions, which logically extends to "an unconscionable fee-shifting provision, or a provision yielding unconscionable results." Saylor, J., Concurring and Dissenting Op., at 617 n. 1, 985 A.2d at 778 n. 1 (citing *Salley v. Option One Mortgage Corp.*, 592 Pa. 323, 925 A.2d 115 (2007)). And so it is not accurate to conclude, as the Majority has, that failure to authorize *sua sponte* review for reasonableness will result "in no safety valve and courts would be required to award attorney's fees even when such fees are clearly excessive." Majority Op., at 613, 985 A.2d at 776. Although the Majority's rule is cloaked in terms of "reasonableness," it will be an overly invasive rule, and difficult to define in a fashion that would promise any modicum of even and fair application.

Although, like Justice Saylor, I would prefer to leave the broader questions to a more suitable case, since the Majority

proceeds to decision, I offer my own view here. I find persuasive appellant's argument that, when the terms of a written contract are clear, a court should not re-craft the agreement to conflict with its plain language. Courts in Pennsylvania have long held that a contract is to be construed in accordance with the language chosen by the parties:

> In interpreting the language of a contract, we attempt to ascertain the intent of the parties and give it effect. *Crawford Central Sch. Dist. v. Commonwealth of Pennsylvania,* 585 Pa. 131, 143, 888 A.2d 616, 623 (2005). When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, *Stewart v. McChesney,* 498 Pa. 45, 49, 444 A.2d 659, 661 (1982), which will be given its commonly accepted and plain meaning, *J.K. Willison, Jr. v. Consol. Coal Co.,* 536 Pa. 49, 54, 637 A.2d 979, 982 (1994).

*LJL Transp., Inc. v. Pilot Air Freight Corp.,* 599 Pa. 546, 962 A.2d 639, 647 (2009). *See also Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.,* 588 Pa. 470, 905 A.2d 462, 468 (2006) (where terms of contract are clear and unambiguous, intent of parties is ascertained from document itself); *Chen v. Chen,* 586 Pa. 297, 893 A.2d 87, 93 (2006) (meaning of contract is ascertained from contents alone where no ambiguity exists).

The parties' agreement in this instance was clear and unambiguous. It provided that: "the party breaching this contract shall be responsible for the payment of legal fees and costs **incurred by the other** in enforcing their rights under this Agreement" (emphasis added). There is nothing about "reasonableness" in the contract; there is nothing reposing the measure of reasonableness in a trial court's idiosyncratic judgment (as opposed to, for example, the parties' familiarity with each other); and there is nothing inherently unconscionable in the omission of the term.

Therefore, the meaning of the attorney's fees provisions should be divined from the language of the agreement itself, and not according to the trial court's imposition of a requirement that the attorney's fees be reasonable. To make matters worse, that "reasonableness" was then measured, without a

relevant record, by the trial court's own idiosyncratic judgment. And that judgment, in turn, was suspect to the extent that the trial court factored in its disapproval of appellant for failing to pursue settlement in a case where she was the innocent and aggrieved party. There is no allegation that the parties' agreement was the result of anything other than arm's length negotiations. There is nothing on the face of the agreement, or in the amount of attorney's fees, that is unconscionable. Therefore, the parties should be held to the terms of the agreement they negotiated.

The result of the trial court's decision is that appellant is now forced to bear a substantial portion of the financial burden of appellee's unilateral breach of their agreement. The inclusion of the attorney's fees provision in the parties' agreement obviously was intended as a disincentive to breach the agreement. The trial court has removed that disincentive and, in effect, penalized appellant for appellee's breach. That is contrary to the clear intent of the parties' contract and to Pennsylvania authority regarding contract interpretation.

Even assuming the trial court had the power to insert a requirement that the attorney's fees be reasonable, a fee of $3,000 to prosecute a petition to enforce the terms of this marital settlement agreement is not self-evidently unreasonable. Appellee has not shown the fee award here to be out of line when compared to what family law practitioners generally charge. Moreover, appellee had his own self-help remedy to shield himself against such costs: he could have just honored his obligation, and when called to task for failing to do so, he should be bound by his contractual agreement.

I am also puzzled by the fact that the rule the Majority adopts provides that trial courts "may" consider the reasonableness of attorney's fees, without addressing the more salient question of whether they are authorized to do so *sua sponte*—as actually happened here. Majority Op., at 615, 985 A.2d at 777. Obviously, it is one thing to entertain issues actually raised by a party, and quite another thing to become a party's champion, uninvited. The Majority recognizes that

appellant argues this very point, *id.* at 608–11, 985 A.2d at 773–74, yet inexplicably leaves it undecided.

Equally inexplicable is the fact that the Majority denies appellant any opportunity to prove the reasonableness of the fee. The Majority merely purports to authorize reasonableness inquiries at the trial court level and then washes its decisional hands. Nor does the Majority provide any guidance as to just how that inquiry should proceed: There is no discussion of which party has the burden of proof, the party seeking fees or the party responsible for the fees; no suggestions regarding factors trial courts should consider in making the reasonableness assessment; or even any parameters or limits on the trial court's discretion. Would a trial court's inquiry necessarily be different in cases in rural communities than in urban locations where average attorney hourly rates are likely higher? Should trial courts treat family law matters differently or the same as other civil matters? The Majority Opinion leaves all of these questions unanswered. In short, the Majority reaches out to "decide" an issue arguably not encompassed in our grant of review and one that the parties did not fully brief, and then approves a general and intrusive power without offering the bench and bar any clue concerning the actual exercise of this new, disruptive power.

There is nothing in the record before this Court to indicate that the trial court heard any evidence regarding the reasonableness of the fee. Notably, appellant has forwarded a very modest request that, if the intrusion be approved, this Court should remand to the trial court for just such a fact-finding. The Majority says no. The result is a judicial double-blow: The Majority unnecessarily reaches out to decide a broad question of policy in a case ill-suited to the task, announcing a new rule of law allowing trial courts to *sua sponte* look outside the language of an arms' length contract and thereby drastically altering appellant's expectations; and then denies appellant any opportunity to prove the reasonableness of the fees her counsel charged, leaving intact an unmoored and unexplained fee reduction.

I would not lose sight of the trial court action that the Majority lets stand. The attorney's fee reduction below is bottomed upon an assumption that reasonable minds could not

disagree that one cent more than $1,200 would make the fee here "clearly excessive."  I do not believe that the trial court was equipped to render such a pronouncement, especially where there was no record.  Any decision on the reasonableness of a fee is fact-bound.  For wealthy litigants employing major law firm partners, for example, it is difficult to imagine that a fee of $3,000 would be considered unreasonable for purposes of any litigation.  I realize that the means of the parties here are more modest, but it is still difficult to see a $3,000 fee for litigation services as manifestly excessive.  There is no support for a conclusion that the fee is *per se* unreasonable, and the trial court's 60% reduction of the actual fee was based, in part, upon an inappropriate punitive consideration.  And so, if we must decide the abstract question the Majority decides, I would also decide the actual case:  and I would reverse since this fee-reduction is inherently suspect, it is unsupported by any factual record, it is uncabined by any defined parameters governing such interference, and the fee reduction, therefore, is essentially arbitrary.  And that is unreasonable.

I respectfully dissent.