J. A20040/17 & J. A20041/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| P.S.M., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1915 MDA 2016 |
| | : | |
| A.R.M. | : | |

Appeal from the Order Entered October 25, 2016,
in the Court of Common Pleas of Berks County
Civil Division at No. 02-01363

| | | |
|---|---|---|
| P.S.M., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 2102 MDA 2016 |
| | : | |
| A.R.M. | : | |

Appeal from the Order Entered November 22, 2016,
in the Court of Common Pleas of Berks County
Civil Division at No. 02-01363

| | | |
|---|---|---|
| P.S.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| A.R.M., | : | No. 2094 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered November 22, 2016,
in the Court of Common Pleas of Berks County
Civil Division at No. 02-01363

BEFORE:  GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JANUARY 24, 2018**

P.S.M. ("Husband") appeals from the October 25, 2016 order entered in the Court of Common Pleas of Berks County that set forth Husband's child support obligations, as well as the parties' obligations for college tuition for their oldest child, M.M.   A.R.M. ("Wife") appeals from that part of the November 22, 2016 order entered in the Court of Common Pleas of Berks County that awarded her $4,725.00 in reasonable attorneys' fees that Wife incurred to enforce the parties' July 1, 2003 Post-Nuptial Agreement ("PNA") after the trial court found Husband in breach of the PNA.   Husband cross-appeals from the November 22, 2016 order.   For ease of review, this court consolidated the appeals from October 25, 2016 and the November 22, 2016 orders ***sua sponte***.   For the reasons that follow, we affirm both orders.

The trial court set forth the following:

> [Husband and Wife] were married on May 30, 1993 in New Jersey.  They were divorced on January 30, 2007 in Berks County, Pennsylvania.  On or about July 1, 2003, [Husband and Wife] entered into a [PNA] which settled their claims and ancillary issues with respect to divorce, equitable distribution and support.  On November 13, 2015, [Wife] filed a Petition for Enforcement and Contempt of the July 1, 2003 [PNA], alleging that [Husband] failed to abide by a multitude of the provisions of the PNA, compromising [Wife's] financial well-being and benefit of the bargain.  The petition contained seven counts, only one of which, Count I, applies to

[Husband's] appeal. Unfortunately, this case had a protracted course of proceedings before it was reassigned to the undersigned in July of 2016[;] argument was held on February 1, 2016 before the Honorable Madelyn Fudeman; two subsequent hearings were held on the outstanding issues, on March 2, 2016, [and] June 2, 2016.

On October 25, 2016, after hearing and review of all the transcripts of the prior proceedings, we issued an Order determining, *inter alia*, the issue of child support for the parties' oldest child[, M.M.]. On November 22, 2016, [Husband] filed a Notice of Appeal to the Superior Court. In response to our Order, [Husband] filed a Concise[Footnote 2] Statement of [Errors] Complained of on Appeal, asserting that we erred by, *inter alia*, finding he has a child support obligation for [M.M.,] an emancipated child/adult.

[Footnote 2] [Husband's] concise statement is anything but concise. We will address his overriding claim of error, which is his continuing obligation to pay child support for his daughter, who is in college.

Trial court opinion, 12/21/16 at 1-2.

Husband raises the following issues for our review:[1]

1. Did the Trial Court err in the Order dated October 25, 2016, by finding that [Husband] is required to continue to pay $1,615.00 every

---

[1] We note that Husband's statement of questions involved contains thirteen questions for our review, two of which contain subparts. Eight of Husband's questions involved concern his cross-appeal from the November 22, 2016 order. Therefore, we only set forth the five questions involved that raise the issues that Husband requests that we review with respect to his appeal of the October 25, 2016 order. We also note that issue number 5, above, was originally numbered in Husband's brief as issue number 13. Additionally, we set forth the remainder of Husband's issues in that part of this memorandum that resolves Husband's cross-appeal from the November 22, 2016 order.

two weeks for the support of the parties' two children until such time as [Wife's] alimony terminates, for reasons that include the following:

a. The finding by the Trial Court results in [Husband] continuing to have a child support obligation for a child who is emancipated/adult; and/or

b. The finding by the Trial Court results in the receipt by [Wife] of child support for an emancipated child/adult; and/or

c. The finding by the Trial Court results in the receipt by [Wife] of child support for an emancipated child/adult for whom [Wife] does not incur any expenses due to the emancipated child/adult residing at the college attended by the emancipated child/adult; and/or

d. The finding by the Trial Court results in a double support obligation by [Husband] for the emancipated child/adult, as in the Order dated October 25, 2016, [Husband] is also required to pay one-half of the emancipated child/adult's college tuition including all course credits, room and board costs at the college attended by the emancipated child/adult?

2. Did the Trial Court err in the Order dated October 25, 2016 by finding that [Husband] has a child support obligation for two children, payable to [Wife], notwithstanding the emancipation of one of these children, as the finding by the Trial Court results in the receipt

by [Wife] of child support for an emancipated child/adult who does not reside with [Wife]?

3. Did the Trial Court err in the Order dated October 25, 2016, by finding that [Husband] has a child support obligation for an emancipated child/adult payable to [Wife], rather than payable directly to the emancipated child/adult?

4. Did the Trial Court err in the Order dated October 25, 2016, by finding that [Husband] is required to continue to pay $1,615.00 every two weeks for the support of the parties' two children until such time as [Wife's] alimony terminates, as [Husband's] child support obligation is separate and apart from [Husband's] alimony obligation for reasons that are as follows:

   a. The provision requiring [Husband] to pay child support is separate and apart from the provision requiring [Husband] to pay alimony; and/or

   b. The finding by the Trial Court that [Husband's] child support obligation is "tied" to [Husband's] alimony obligation is against public policy as it results [in] the receipt by [Wife] of alimony in the "guise" of child support?

[5.] Did the Trial Court err by failing to grant the Motion to Dismiss to [Wife's] Petition for Enforcement and Contempt of the July 1, 2003 [PNA] for reasons that include the following:

   a. [Wife] cannot seek the enforcement of a child support obligation in a [PNA] by the filing of a Petition for Contempt in a divorce action; and/or

b.	[Wife] is required to seek enforcement of a child support obligation in a [PNA] by filing a lawsuit based on a breach of contract; and/or

c.	[Wife] did not plead facts sufficient for the Trial Court to grant the relief requested in [Wife's] Petition for Enforcement and Contempt of the July 1, 2003 [PNA]?

Husband's brief at 9-10, 12.

The following principles guide our review of a PNA:

> A marital settlement agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise.
>
> In conducting our review of the court's holding as to the marital settlement agreement, we remain cognizant of the following:
>
> > Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is **de novo** and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.
>
> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement,

> we must decide whether the trial court committed an error of law or abused its discretion.

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa.Super. 2007) (quotation marks and internal citations omitted).

A property settlement agreement between spouses is interpreted "in accordance with the same rules applying to contract interpretation." ***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa.Super. 2004). The goal of contract interpretation is, "to ascertain and give effect to the parties' intent." ***Id.*** Furthermore, where "the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself." ***Id.*** The parties' intent, "must be ascertained from the entire instrument," and "effect must be given to each part of a contract." ***Purdy v. Purdy***, 715 A.2d 473, 475 (Pa.Super. 1998) (citation omitted), ***appeal denied***, 794 A.2d 363 (Pa. 1999).

At the outset, we note that Husband and Wife agreed within the terms of the PNA that the PNA would "continue in full force and effect after such time as a final decree in divorce may be entered." (PNA, 7/1/03 at 2, ¶ 2.) The record further reflects that the parties' PNA was incorporated into their divorce decree. (Decree, 1/30/07.) Therefore, the PNA survives the divorce decree and is enforceable. ***Kraisinger***, 928 at 339.

With respect to his child support obligation for the parties' oldest child, M.M., Husband first complains that he should not be required to pay child support for that child because M.M. is emancipated; that requiring him to

pay child support for an emancipated child results in a double support payment because he must also share in the cost of M.M.'s college education expenses; and that his child support obligation to the emancipated child should not be tied to his alimony obligation as against public policy.

Part C of the parties' PNA sets forth the parties' agreement regarding, among other things, child support and alimony, in relevant part, as follows:

1. **Support For The Children**—Husband shall pay One Thousand Six Hundred and Fifteen Dollars ($1,615.00) every two weeks for the support of the parties' two children. This amount shall be fixed and non-modifiable during the period of time Husband is paying alimony to Wife, but thereafter may be adjusted upon appropriate petition by either party to reflect the actual incomes of the parties at the time. . . .

2. **Alimony Pendente Lite/Alimony**—Husband shall pay alimony pendente lite to Wife in the amount of One Thousand Two Hundred Sixty Nine Dollars ($1,269.00) every two weeks until January 1, 2004. Thereafter, Husband shall pay to Wife the sum of One Thousand Eighty Three and 33/100 Dollars ($1,083.33) per month, payable at the rate of Five Hundred Dollars ($500.00) every two weeks, as alimony commencing on January 1, 2004 and continuing for a period of one hundred eighty (180) months thereafter. . . .

PNA, 7/1/03 at 10-11, § C, ¶¶ 1-2.

By the clear and unambiguous language of the PNA, Husband and Wife intended that Husband's child support obligation be fixed and non-modifiable during the 15-year alimony period that commenced on January 1, 2004, and

will end on December 31, 2018, at which time Husband's child support obligation "may be adjusted upon appropriate petition by either party to reflect the actual incomes of the parties at the time." (*Id.* at 11, § C, ¶ 1.) Therefore, Husband's claims that he should not be required to pay child support for the parties' oldest child because that child is emancipated and/or because the duration of his child support obligation should not be tied to his alimony obligation are belied by the clear and unambiguous language of the PNA. Certainly, the parties knew how old their children were when they entered into the PNA. Within the clear and unambiguous language of the PNA, the parties agreed that Husband would pay alimony for a 15-year period beginning on January 1, 2004, and that Husband's child support obligation would be fixed and non-modifiable during that 15-year time period, but "thereafter may be adjusted." (*Id.*) This clear and unambiguous language demonstrates that the parties intended that the duration of Husband's child support obligation be tied to the duration of Husband's alimony obligation. Moreover, the parties had to know how old their children would be at the end of the 15-year alimony period during which time Husband's child support payments were fixed and non-modifiable. The clear and unambiguous language of the PNA demonstrates the parties' intent that following the expiration of the 15-year alimony period, Husband's child support obligation may be adjusted. As such, the parties intended that Husband's child support obligation could continue after December 31, 2018.

Therefore, Husband's claims that he should not be required to pay child support for M.M. because she is an emancipated child and that his child support obligation should not be tied to his alimony obligation necessarily fail on the basis of the clear and unambiguous language of the parties' PNA.

Husband also complains that requiring him to pay child support for M.M. and share the cost of M.M.'s college education expenses results in a double child support payment. Once again, the clear and unambiguous language of the PNA demonstrates the parties' intent and, consequently, belies Husband's claim. The parties' PNA contains a separate provision that addresses the children's education expenses, including higher education expenses, within the same section that contains the child support provision. In the educational expenses provision, the parties agreed to establish a college fund for each child. (*Id.* at 14, C(6)(B).) The parties further agreed that to the extent that the college funds proved insufficient to cover the full cost of the respective child's undergraduate college expenses, the parties would determine their contributions to additional costs based on their financial circumstances at the time or, if they were unable to agree, the matter would be determined by a court of competent jurisdiction. (*Id.* at 15.) Therefore, the plain language of the PNA demonstrates the parties' intent that Husband's child support obligation remain separate and distinct from the parties' funding of their children's higher education. As such, this claim fails.

Husband also complains that to the extent that he is obligated to pay child support for M.M., he should pay that child support directly to M.M. and not to Wife. Husband cites no case law, and we are aware of none, that supports his claim that his payment should be made directly to the child because the child is emancipated. In fact, Husband fails to develop a legal argument on this issue. Rather, within this section of his brief, Husband continues to complain that M.M. is emancipated and, despite the plain language of the PNA to the contrary, that he should be relieved of his child support obligation to M.M. As such, Husband waives this issue on appeal. *See* Pa.R.A.P. 2119(a) (an appellate brief must contain "discussion and citation of authorities" to each issued raised); *see also Butler v. Illes*, 747 A.2d 943, 944 (Pa.Super. 2000) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, [this] court will not consider the merits thereof." (citations omitted)).

Husband next complains that the trial court erred in denying his motion to dismiss Wife's petition for enforcement of the PNA and contempt that resulted in the entry of the October 25, 2016 order from which he now appeals. Husband claims that Wife was procedurally unable to bring her breach of the PNA claim in a contempt proceeding under the Divorce Code.

Pursuant to the Divorce Code,

> [a] party to an agreement regarding matters within
> the jurisdiction of the court under this part, whether

> or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S.A. § 3105(a).

The Divorce Code further provides that

> [a] decree granting a divorce or an annulment shall include, after a full hearing, where these matters are raised in any pleadings, an order determining and disposing of existing property rights and interests between the parties, custody, partial custody and visitation rights, child support, alimony, reasonable attorney fees, costs and expenses and any other related matters, including the enforcement of agreements voluntarily entered into between the parties. In the enforcement of the rights of any party to any of these matters, the court shall have all necessary powers, including, but not limited to, the power of contempt and the power to attach wages.

*Id.* at § 3323(b).

Here, Wife filed a 7 count "petition for enforcement and contempt of the [PNA]" wherein she sought, among other things, enforcement of the parties' PNA and a contempt finding against Husband. (Docket # 15.) In his brief, Husband refers to Wife's petition as a "petition for contempt and enforcement" and argues that Wife was procedurally barred from filing a contempt action because no court order existed of which Husband failed to

comply.[2] (Husband's brief at 31-32.) Husband, however, ignores that Wife's petition sought enforcement of the PNA. Husband also ignores that the trial court made no contempt finding. Therefore, despite the arguably imprecise title of Wife's petition, our review of that petition demonstrates that Wife brought an action seeking enforcement of the PNA, reimbursement of child-related expenses, and attorney's fees for enforcement of the PNA which the Divorce Code and the PNA permitted Wife to do. Therefore, this claim lacks merit.

For the reasons set forth above, we affirm the October 25, 2016 order.

We now turn to Wife's appeal and Husband's cross-appeal of the November 22, 2016 order. The trial court set forth the following:

> On November 13, 2015, [Wife] filed a petition for Enforcement [of] Contempt of the [PNA], alleging that [Husband] failed to abide by a multitude of the provisions of the PNA, compromising [Wife's] financial well-being and benefit of the bargain. The petition contained seven counts, only one of which, Count I, was brought before this Court.[Footnote 2]
>
> > [Footnote 2] This case had a protracted course of proceedings before it was reassigned to the undersigned in July of 2016[;] argument was held on February 1, 2016 before the Honorable

---

[2] Generally, in civil contempt proceedings, the complainant bears the burden of proving that the defendant failed to comply with a court order. **MacDougall v. MacDougall**, 49 A.3d 890, 892 (Pa.Super. 2012) (citation omitted). To sustain a finding of civil contempt, the complainant must prove by a preponderance of the evidence that (1) the contemnor had notice of the order that she alleges the contemnor disobeyed; (2) the act constituting the alleged violation was volitional; and (3) the contemnor acted with wrongful intent. **Id.** (citation omitted).

Madelyn Fudeman; two subsequent hearings were held before her on the outstanding issues, on March 2, 2016 and June 2, 2016.

On October 25, 2016, after hearing and review of all the transcripts of the prior proceedings, we issued an Order determining, *inter alia*, the issues of child support and college tuition for the parties' oldest child. We took the matter of unreimbursed expenses and credits, as well as a claim for counsel fees for [Wife], under advisement and gave the parties ten days to submit documentation to the Court to substantiate their claims. On November 22, 2016, we entered an Order addressing these outstanding claims, which are the subject of the instant appeal. On December 21, 2016, [Wife] filed a Notice of Appeal to the Superior Court. On December 23, 2016, we ordered [Wife] to file a concise statement of the errors complained of on appeal, which she filed on January 17, 2017.

Trial court opinion, 1/19/17 at 1-2 (footnotes 3 and 4 omitted).

The record reflects that on December 2, 2016, Husband filed a notice of appeal of the November 22, 2016 order to this court. The trial court then ordered Husband to file a Rule 1925(b) statement. Husband timely complied. The trial court then filed its Rule 1925(a) opinion.

Wife raises the following issues for our review:

[1.] Despite the Trial Court's unambiguous finding in its October 25, 2016 Order that [Husband] breached the parties' [PNA], did the Trial Court abuse its discretion and misapply the law when it required [Husband] to only pay a substantially reduced sum of the attorney's fees incurred by [Wife] in her attempt to enforce the terms of the [PNA]?

[2.] Specifically, did the Trial Court abused [sic] its direction [sic] and misapply the law when it ignored the clear and unambiguous language of Chapter H, Subpart 3 (page 30) of the parties' [PNA] which requires the payment of counsel fees in enforcement matters, when it awarded [Wife] a reduced sum of counsel fees in the amount of $4,725.00 rather than the full amount of fees incurred, or $20,479.00?

[3.] Did the Trial Court abuse its discretion and misapply the law and fail to follow proper legal procedure when it rendered the reduced award without issuing any findings on the record or written opinion, as to the basis and reasonableness of the fee award?

[4.] Did the Trial Court abuse its discretion, misapply the law and fail to follow proper legal procedure by failing to properly assess the reasonableness of the fee award by reducing it to more than half of that requested by [Wife], without giving any consideration as to (i) the scope of the amount of work performed; (ii) the complexity and subject matter of the litigation; and the (iii) favorable results obtained?

[5.] Did the Trial Court abuse its discretion and misapply the law when it contradicted public policy by failing to uphold in its entirety, the mutually agreed upon counsel fee enforcement provision of the [p]arties' [PNA]?

Wife's brief at 3-4.

In his cross-appeal of this order, Husband raises the following issues for our review:

[1.] Did the Trial Court err by finding that [Husband] breached the parties' [PNA] dated July 1, 2003?

- 15 -

[2.]    Did the Trial Court err by finding that [Husband] was required to pay [Wife] any attorney fees for breaching the parties' [PNA] dated July 1, 2003, including, but not limited to, the sum of $4,725.00?

[3.]    Did the Trial Court err by finding that the sum of $4,725.00 was a reasonable amount of attorney fees incurred by [Wife] for the enforcement of the [PNA] dated July 1, 2003?

[4.]    Did the Trial Court err by finding [Husband] was required to pay [Wife] any amount, including, but not limited to, the sum of $4,725.00, as attorney fees for the enforcement of the [PNA] dated July 1, 2003?

[5.]    Did the Trial Court err in not including in its Order, its calculation of the amount of allowable expenses as well as its calculation of the amount of credit due to [Husband] towards the allowable expenses?

[6.]    Did the Trial Court err in calculating the amount of allowable expenses to be $15,685.22?

[7.]    Did the Trial Court err in calculating the amount of credit due to [Husband] for allowable expenses to be $10,500.00?

[8.]    Did the Trial Court err in requiring the payment by [Husband] to [Wife] of the sum of $5,185.22 as the amount due by [Husband] to [Wife] for payment of expenses?

Husband's brief at 11-12.

At the outset, we note that for ease of discussion, we will dispose of Wife's and Husband's issues in the most logical order.

Generally, each side is responsible for the payment of its own costs and counsel fees, absent bad faith or vexatious conduct. ***McMullen v. Kutz***, 985 A.2d 769, 775 (Pa. 2009) (citations omitted). "This so-called 'American Rule' holds true 'unless there is express statutory authorization, a clear agreement of the parties or some other established exception.'" ***Id.*** (citations omitted).

Here, with respect to "counsel fees and expenses," the PNA provides that:

> [e]ach party hereby agrees to be solely responsible for her or his own counsel fees, costs and expenses and that neither shall seek any contribution thereto from the other party except as otherwise provided herein.

PNA, 7/1/03 at 25, § E, § 1.

With respect to "attorneys' fees for enforcement," the PNA provides that:

> [i]n the event that either party breaches any provision of [the PNA] and the other party retains counsel to assist in enforcing the terms thereof, the parties hereby agree that the breaching party will pay all attorneys' fees incurred by the other party in enforcing the [PNA], provided that the enforcing party is successful in establishing that a breach has occurred.

***Id.*** at 30, § H, ¶ 3.

Husband first contends that the trial court erred in finding that Husband breached the PNA because "[i]t is illogical to find that Husband was not guilty of contempt but that he had breached the [PNA]." (Husband's

brief at 21.) Following this legally incorrect pronouncement, Husband then baldly asserts that Wife "did not prove a breach" because she "did not prove that there were 'resultant damages.'" (*Id.*)

To sustain a finding of civil contempt, the complainant must prove by a preponderance of the evidence that (1) the contemnor had notice of the order that she alleges the contemnor disobeyed; (2) the act constituting the alleged violation was volitional; and (3) the contemnor acted with wrongful intent. *MacDougall*, 49 A.3d at 892 (citation omitted). To establish a breach of contract, the party claiming breach "must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa.Super. 2006) (citation omitted). Therefore, Husband's assertion that "[i]t is illogical to find that Husband was not guilty of contempt but that he had breached the [PNA]" is not legally sound because civil contempt and breach of contract do not share the same elements of proof.

In Husband's first issue, Husband neither disputes the existence of the PNA nor argues that he did not breach a duty or duties imposed by the PNA. Husband merely asserts that Wife did not prove resultant damages. Consequently, Husband's first issue in his cross-appeal does nothing more than set the stage for Husband's arguments that the trial court erred in

awarding attorney's fees to Wife and that it erred in its calculation of reimbursable allowable expenses to Wife.

In his brief, Husband discusses his second, third, and fourth cross-appeal issues together because, according to Husband, they are "interrelated" and will, therefore, "be argued as a whole." (Husband's brief at 21.) In these issues, Husband contends that Wife should not have been awarded attorney's fees because he did not engage in "dilatory, obdurate or vexacious [sic] conduct." (Husband's brief at 23.)

At the outset, we note that four hearings were held in this matter, totaling over 400 transcribed pages. Husband, however, seizes upon seven sentences, strategically extracted from a span of eight pages of the June 2, 2016 hearing transcript in order to seemingly demonstrate that he has clean hands in an effort to convince this court that he should not be required to pay the reasonable attorney's fees that the trial court assessed. (Husband's brief at 21 & 23.) We further note that in his brief, Husband cites to ***Werner v. Werner***, 149 A.3d 338 (Pa.Super. 2016), for the proposition that an award of attorney's fees is only appropriate when the party ordered to pay the fees engaged in dilatory, obdurate, or vexatious conduct. (Husband's brief at 21-22.) That case, however, did not concern a marital agreement that contained a provision for counsel fees and is, therefore, not on point. The only other case cited by Husband is ***Haser v. Haser***, 2016 Pa.Super.Unpub.LEXIS 164 (Pa.Super. 2016), which is an

unpublished memorandum of this court that has no precedential value. ***See*** Superior Court I.O.P. 65.37(A) (providing that, with limited exceptions not applicable here, "[a]n unpublished memorandum shall not be relied upon or cited by a [c]ourt or a party in any other action or proceeding"). Notwithstanding the fact that this memorandum has no precedential value, we note that it is not on point. There, a consent order contained a provision for counsel fees, but because both parties were in default of that consent order, the trial court found, and a panel of this court affirmed, that neither were entitled to counsel fees. The trial court also refused to award counsel fees under 42 Pa.C.S.A. § 2503(7) which permits an award of counsel fees as a sanction for dilatory, obdurate, or vexatious conduct, because it found, and this court affirmed, that neither party engaged in that conduct.

Here, the parties PNA provides that:

> [i]n the event that either party breaches any provision of [the PNA] and the other party retains counsel to assist in enforcing the terms thereof, the parties hereby agree that the breaching party will pay all attorneys' fees incurred by the other party in enforcing the [PNA], provided that the enforcing party is successful in establishing that a breach has occurred.

***Id.*** at 30, § H, ¶ 3.

The trial court found that Husband breached the PNA, Wife retained counsel to assist in enforcing the PNA, and Wife was successful in establishing the breach. Nothing in the PNA required the trial court to find that Husband, as the breaching party, engaged in dilatory, obdurate, or

vexatious conduct as a condition precedent to awarding Wife counsel fees. Therefore, Husband's second, third, and fourth cross-appeal claims fail.

With respect to the award of attorney's fees, Wife contends that because the trial court found that Husband breached the PNA, the terms of the PNA required the trial court to award her all of the attorney's fees that she incurred in connection with enforcement of the PNA. Contrary to Wife's claim, in **McMullen**, which is a case strikingly similar to the one before us, our supreme court held that "parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case, but the trial court may consider whether the fees claimed to have been incurred are reasonable, and to reduce the fees claimed if appropriate." **McMullen**, 985 A.2d at 777. In so holding, our supreme court recognized that if a trial court were forbidden from inquiring into reasonableness, "there would be no safety valve and courts would be required to award attorney fees even when such fees are clearly excessive." **Id.** at 776.

Here, the trial court, "after a review of the facts of this case, the Affidavit of Counsel Fees and the 38 pages of counsel fees incurred," "found the fees to be unreasonable and excessive." (Trial court opinion, 1/19/17 at 4.) In Wife's first two issues, she only challenges the trial court's power to assess the reasonableness of the attorney's fees. Stated differently, in those issues, Wife does not claim that the award of attorney's fees was

unreasonable; rather, she claims that the trial court had no power to determine reasonableness. Contrary to Wife's claim, *McMullen* empowered the trial court to assess reasonableness. Accordingly, Wife's first two issues lack merit.

*McMullen* also resolves Wife's fifth issue in which she contends that the trial court abused its discretion and misapplied the law "when it contradicted public policy by failing to uphold in its entirety, the mutually agreed upon counsel fee enforcement provision of the [PNA]." (Wife's brief at 4.) Again, pursuant to *McMullen*, the trial court properly exercised its discretion in assessing the reasonableness of the attorney's fees and, after finding the fees unreasonable, in reducing those fees.

In her third and fourth issues, Wife claims that the trial court abused its discretion and misapplied the law by "fail[ing] to follow proper legal procedure when it rendered the reduced award without issuing findings on the record or written opinion, as to the basis of the reasonableness of the fee award" and failing to consider "the scope and amount of work performed[,]" "the complexity and subject matter of the litigations[,]" and the "favorable results obtained." (Wife's brief at 3-4.)

Similarly, Husband's final four issues in his cross-appeal challenge the trial court's calculation of the children's expenses that Husband was ordered to reimburse Wife. Husband maintains that the trial court abused its discretion and/or committed an error of law because it did not set forth its

calculations and, according to Husband, the testimony did not support the expense reimbursement amount at which it arrived. (Husband's brief at 22-25.)

With respect to attorney's fees, the trial court "review[ed] the facts of this case, the Affidavit of Counsel Fees and the 38 pages of counsel fees incurred." (Trial court opinion, 1/19/11 at 4.) The trial court further found that both parties failed to comply with the PNA. (Trial court opinion, 1/19/11 at 7.) Additionally, the trial court stated that:

> [a] review of the extensive record in this case shows that, while we did find that [Husband] owed some money to [Wife], she herself did not have clean hands. [Wife] argued that [Husband] was in default of the agreement to pay for all of their oldest daughter's college, knowing she had signed an addendum to the PNA obligating her to pay these college expenses equally with [Husband]. We also found that [Wife] overcharged [Husband] for some of the children's activity expenses. [Husband] argued that he did not give his approval for some of the expenses/activities for which he was charged. The PNA, as amended by the parties, clearly required agreement of the parties for such activities that cost more than $1,000 per year, which agreement [Husband] [Wife][3] did not seek prior to incurring such an expense. [Husband] also asserted that [Wife] did not give him credit for some of the monies he had already paid. For years, [Wife] had agreed to informal adjustments and delayed methods of payment, before filing this petition. The outstanding claims in this case involved an accounting issue which the parties agreed could be calculated by the

---

[3] The original text of this sentence reads, "The PNA, as amended by the parties, clearly required agreement of the parties for such activities that cost more than $1,000 per year, which agreement of Appellee Appellant did not seek prior to incurring such an expense." (Trial court opinion, 1/19/17 at 5.)

undersigned, a trained auditor,[Footnote 5] in lieu of hiring an accountant. Under all of these circumstances, we properly found that the attorney's fees, which exceeded $20,000.00, were unreasonable for this type of contract work and what it entailed to compel enforcement.

> [Footnote 5] The court limited the time frame from 2013 through 2015 for the calculations it made. The parties mailed documentation to the undersigned to address outstanding balances and credits, which we have attached hereto to illustrate our calculations, discussed *infra*.

[With respect to] allowable expenses, . . . we note that there was no exhibit for the court to cite for its basis because [Wife] "submitted" her documentation by e-mail and did not file it in the official court file. For the sake of clarity, we attach said correspondence to this opinion. Despite our ruling that we would only go back as far as 2014, [Wife] included years 2013 through 2016. We did not consider amounts [Wife] claimed remained unpaid for 2011 and 2012 because of the way she agreed to handle these matters with [Husband] during those years. [Wife] did acknowledge a credit due [Husband] from 2013 so we included the unpaid expenses for 2013 in our review, but we did not include 2016. We crossed off expenses that we determined should have been paid out of the child support [Wife] was already receiving from [Husband] and we crossed off expenses that we did not consider as valid reimbursements. We totaled up the reimbursable expenses owed to [Wife] for the four years, from 2013 to 2015, which came to $15,685.22, and subtracted the payments made by [Husband], finding a credit of $10,500.00, to determine that [Husband] still owed [Wife] $5,185.22. It was because there was an outstanding balance that we determined that the PNA was breached, but there was no finding of contempt.

Trial court opinion, 1/19/17 at 5-7 (footnote 6 omitted).[4]

The trial court's opinion set forth the factors that it found relevant and on what basis it awarded counsel fees and reimbursable expenses. Therefore, Wife's and Husband's claims that the trial court failed to set forth its reasoning for its calculations lack merit.

Finally, with respect to Husband's claim that the testimony did not support the reimbursable expense award, we note that in order to bolster this claim, Husband again strategically extracts colloquy from various pages of the June 2, 2016 transcript to seemingly convince this court that the trial court erred in its calculation. Again, there were four hearings in this matter that produced in excess of 400 pages of transcribed colloquy and testimony. The trial court, as the finder of fact, is entitled to weigh the evidence and assess its credibility. *Baehr v. Baehr*, 889 A.2d 1240, 1243 (Pa.Super. 2005) (citation omitted). After reviewing the record, we find no abuse of discretion.

---

[4] We note that the trial court reiterated its calculations in its February 8, 2017 opinion that it filed with respect to Husband's cross-appeal of the November 22, 2017 order.

For the reasons set forth above, we affirm the November 22, 2016 order.

October 25, 2016 order affirmed.  November 22, 2016 order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2018