**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CLARENCE W. FOSTER III | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DNT AUTOMOTIVE GROUP, LLC AND DANIEL R. WHITE ------------------- ------------------------------------------ ------------------------------------------ ------------------------------------------ -------------------------------------- W | : | No. 1037 WDA 2023 |
| & S VEHICLES, LLC D/B/A P&W FOREIGN CARS | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL R. WHITE, AN ADULT INDIVIDUAL, MADISON AUTOMOTIVE GROUP, LLC, A DELAWARE LIMITED LIABILITY COMPANY, AND SUB OF EL CAJON, LLC, A DELAWARE LIMITED LIABILITY COMPANY ----------------- ------------------------------------------ ------------------------------------------ ------------------------------------------ ------------------------------------------ | : | |
| DANIEL R. WHITE | : | |
| | : | |
| v. | : | |
| | : | |
| CLARENCE W. FOSTER III AND TIM SHULTS | : | |
| | : | |
| v. | : | |

| | |
|---|---|
| | : |
| W & S VEHICLES, LLC | : |
| | : |
| | : |
| APPEAL OF: DANIEL R. WHITE | : |

Appeal from the Judgment Entered February 27, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-22-014570,
GD-22-015944, GD-23-000178

BEFORE: OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: MAY 11, 2026**

Appellant, Daniel R. White, appeals from the judgment entered in the Allegheny County Court of Common Pleas, in favor of Appellees, Clarence W. Foster, III, W&S Vehicles, LLC ("W&S") and Tim Shults. Specifically, Appellant challenges the orders which granted Appellees' motion to enforce settlement, motion for contempt, and motion for attorneys' fees, and denied Appellant's motion to enforce settlement. We affirm.

The relevant facts and procedural history of this case are as follows. On December 13, 2022, Appellee Clarence Foster filed a complaint against Appellant and DNT Automotive Group, LLC ("DNT"). In relevant part, the complaint alleged that Appellant and Mr. Foster were the two members of DNT, each with fifty percent ownership. DNT contracted with Ethos Group, Inc. ("Ethos") to sell finance and insurance products offered by Ethos to customers of the car dealerships owned and operated by Appellee, W&S. Mr. Foster was the manager of W&S with a 51% ownership interest in the business and Appellant was a minority member with an 11% ownership interest. Mr.

Foster alleged that Appellant withdrew hundreds of thousands of dollars paid by Ethos to the DNT account without Mr. Foster's consent and without making appropriate distributions to Mr. Foster.

On December 22, 2022, W&S filed a complaint against, *inter alia*, Appellant and Sub of El Cajon, LLC ("Sub"). Sub operated a car dealership and was owned by Appellant and Maximillian Starks. Mr. Starks also had an 11% ownership interest in W&S. Relevant to this appeal, the complaint alleged that Appellant was authorized to secure floorplan financing for W&S from JPMorgan Chase Bank ("Chase Bank"). Unbeknownst to W&S, in addition to securing the floorplan financing and a revolving line of credit for W&S, Appellant also took out a term note ("Chase Note") in the amount of $4,437,500.00 for the benefit of Sub, using W&S' assets as collateral. The complaint alleged that the full amount of the Chase Note went to Sub.

On January 6, 2023, Appellant filed a complaint against Mr. Foster and Appellee Tim Shults and named W&S as a nominal defendant. Mr. Shults had a 16% ownership interest in W&S. Briefly, the complaint alleged that Mr. Foster abused his role as manager of W&S and his mismanagement, self-dealing and deceptive conduct caused harm to W&S and its members. Appellant further alleged that he was entitled to Mr. Shults' ownership interest in W&S. Appellant sought to remove Mr. Foster as manager and member of W&S or alternatively, the dissolution of W&S.

On January 13, 2023, the trial court consolidated all three cases. Thereafter, the parties engaged in settlement discussions. On April 3, 2023,

Appellant's counsel, Brad Funari, Esq., informed the court that the parties had reached a settlement. During a status conference on April 5, 2023, Appellees informed the court that Appellant was refusing to sign the material settlement term sheet ("Term Sheet") that reflected the settlement agreement that the parties had reached. On April 11, 2023, the court held an evidentiary hearing to determine whether to enforce the settlement agreement.

At the hearing, Appellees called Gretchen E. Moore, Esq., counsel for W&S, to testify. Attorney Moore testified that the parties agreed to engage in settlement discussions to resolve all disputes on March 22, 2023. There was urgency to try to resolve the disputes between the parties because Appellant, Mr. Foster, Sub and W&S received a default letter from Chase Bank on January 31, 2023. The letter informed the parties that the floorplan credit agreement would be terminated on May 1, 2023 and all amounts outstanding under the floorplan credit agreement and the Chase Note would become due and payable on this date. (**See** Settlement Enforcement Hearing - W&S Exhibit 1, submitted 4/11/23). All parties agreed that they would engage in settlement discussions to negotiate a "global business divorce." Additionally, Appellant represented that he had authority to speak for Mr. Starks and presented a document signed by Mr. Starks stating that Mr. Starks executed a purchase agreement in which he sold all of his ownership interests in W&S to Appellant. (**See** Settlement Enforcement Hearing- W&S Exhibit 2, submitted 4/11/23).

The parties did not reach an agreement on March 22, 2023. The parties continued settlement talks on March 23, 2023 and came to an agreement on

- 4 -

many of the non-monetary terms of a settlement. On March 23, 2023, the parties received another letter from Chase Bank, which stated that Sub was "out of trust" on the floorplan agreement because it failed to remit payments to Chase Bank from the sale of vehicles as required by the agreement. (*See* Settlement Enforcement Hearing - W&S Exhibit 3, submitted 4/11/23). The parties reconvened on March 24, 2023, and reached an agreement to settle all disputes in the consolidated cases at approximately 6:00 p.m.

At 6:11 p.m. on March 24, 2023, Appellant's counsel, Attorney Funari, sent an email to all the parties stating:

> Confirming that the parties have reached an agreement this afternoon to resolve all disputes for $1.9mm and other non-monetary terms which are being memorialized in a term sheet prepared by Mr. Foster's counsel. We appreciate that it is taking longer than you expected to prepare the document. We look forward to receiving it and will work diligently to review and comment on it, including reviewing it with [Appellant] and [Mr. Starks] over the weekend.

(Settlement Enforcement Hearing - W&S Exhibit 4, submitted 4/11/23). At 6:15 p.m., Attorney Moore sent an email to the parties stating, "Please find attached for your review and comment the material settlement term sheet, as agreed upon today by all parties." (Settlement Enforcement Hearing - W&S Exhibit 5, submitted 4/11/23, at 1). In relevant part, the Term Sheet attached to Ms. Moore's email provided:

> The following material terms of settlement are made and entered into effective as of March 24, 2023 ("Effective Date") by and among the following parties at settlement discussions on March 22-24, 2023 ("Term Sheet").

- 5 -

\*     \*     \*

The parties to this Term Sheet shall enter into a definitive agreement ("Definitive Agreement") to be executed by the parties which includes all terms contained in this Term Sheet, along with such other terms as are customarily contained in settlement agreements among parties to commercial litigation.

1. Consideration: W&S shall pay one million nine hundred thousand dollars ($1,900,000) (the "Settlement Payment") to [Appellant] and [Mr.] Starks.

   \*     \*     \*

   b. The Settlement Payment shall be delivered within ten (10) days of an executed Definitive Settlement Agreement, signed by all parties, as set forth herein.

   c. The Settlement Payment shall be paid … to [Appellant] and [Mr.] Starks upon the satisfaction of all conditions and obligations of [Appellant] under the terms of the Definitive Agreement and this Term Sheet.

2. Consideration: The following parties will take the following actions:

   \*     \*     \*

   b. [Appellant] and/or [Sub] pay off the Chase Note as defined below in the original amount of $4,437,500 with Chase at [Sub.]

      i.     [Appellant] will indemnify, defend and hold [Mr.] Foster, [Mr.] Shults, … and W&S harmless from and against any claims, obligations, and liabilities related to or arising out of the Chase Note.

      ii.     [Appellant] obtains release on behalf of [Mr.] Foster and W&S from Chase related to

and arising out of the Chase Note. [Appellant] to secure satisfaction of the Chase Note.

\* \* \*

f.  Disputes re Ethos funds and [MTD Holdings, LLC[1]] are hereby resolved.

i.  Contingent upon review books of DNT and MTD and release of each entity as needed. [Mr.] Foster to be held harmless in relation to any acts or conduct of DNT and MTD.

\* \* \*

10. W&S shall prepare the Definitive Agreement incorporating the terms of this Term Sheet. The agreed upon terms in this Term Sheet shall be binding on the Parties and shall not be subject to further negotiation in preparation of the Definitive Agreement.

11. Standard agreement terms for the Definitive Agreement, such as:

\* \* \*

e. Fee Shifting – in the event any Party to the Definitive Agreement and this Term Sheet brings an action or suit against any other Party by reason of any breach or alleged breach of any agreement, covenant, or condition of this Agreement, then and in that event, the substantially prevailing party as reflected in a final judgment shall be entitled to have and to recover from the other Party or Parties all costs and expenses of suit, including reasonable attorney's fees.

---

[1] Appellant and Mr. Foster each own a 50% membership interest in MTD. The parties disputed ownership of funds in MTD's bank account and assets owned by MTD.

* * *

(*Id.* at 1-7).

Attorney Moore testified that the Term Sheet accurately reflected the settlement agreement reached by the parties on March 24, 2023. Regarding the Ethos funds, Attorney Moore explained that the parties agreed that they would not pursue any claims related to past funds distributed by Ethos and any outstanding funds would be split between Appellant and Mr. Foster. Attorney Moore further reviewed each material term in the Term Sheet and affirmed that Appellant, through his counsel, agreed to the terms at the settlement negotiation. Nevertheless, Appellant did not sign the Term Sheet. Rather, Attorney Funari responded with revisions to the Term Sheet, raising additional issues that were not agreed upon by the parties. Relevant to this appeal, Appellant wanted 120 days to pay off the Chase Note so that Appellant could facilitate the sale of Sub. Attorney Moore stated that the parties did not agree to such a delay due to the impending default date of May 1, 2023.

During cross examination, Attorney Moore acknowledged that Attorney Funari stated during the settlement talks that Appellant was in the process of selling Sub. Nevertheless, Attorney Moore maintained that the parties did not agree that Appellant's obligation to pay off the Chase Note under the settlement agreement was contingent upon the sale of Sub or that Appellant would have a period of 120 days to facilitate the sale of Sub prior to paying off the Chase Note. Attorney Moore further maintained that the parties agreed

to an expeditious business divorce, wherein Appellant would pay off the Chase Note prior to the default date. Additionally, Attorney Moore continued to affirm that the language of the Term Sheet, as originally drafted and attached to her March 24, 2023 email, accurately reflected the agreement reached between the parties on March 24, 2023.

Attorney Moore testified that after Attorney Funari sent his revisions, the parties sent multiple versions of the Term Sheet to each other, attempting to resolve the new disputes that arose, but were unsuccessful. At 4:09 p.m. on April 3, 2023, Attorney Funari sent an email to the court, affirming that the parties settled all claims in the consolidated cases and were working on finalizing the Term Sheet. (*See* Settlement Enforcement Hearing - W&S Exhibit 7, submitted 4/11/23, at 4). Shortly thereafter, Attorney Moore sent an email to the court requesting a settlement conference. (*Id.* at 3). In response, Attorney Funari sent an email to the parties, inquiring why a settlement conference was necessary because "everyone agrees there is a settlement." (*Id.* at 1).

Attorney Moore was the sole witness at the enforcement hearing. At the conclusion of the evidence, the court found that the parties reached an enforceable settlement agreement on March 24, 2023 as reflected in the original Term Sheet that Attorney Moore attached to her March 24, 2023 email. (*See* Settlement Enforcement Hearing - W&S Exhibit 5, submitted 4/11/23). The court further stated that it had "no objection to the parties

entering into subsequent agreements, where they modify or clean up language, but the material terms of the settlement are set forth in Exhibit No. 5, the original Term Sheet." (N.T. Settlement Enforcement Hearing, 4/11/23, at 96).

On April 13, 2023, the court issued an order stating "the settlement reflected in the material settlement term sheet as represented in Exhibit 5 shall be enforced, and a [Definitive Agreement] shall be signed by all parties no later than Tuesday, April 18, 2023." (Settlement Enforcement Order, filed 4/13/23, at 2). The parties subsequently jointly requested that the court extend the deadline to sign a Definitive Agreement to April 20, 2023 at noon, which the court granted. When the deadline passed without a signed Definitive Agreement, Mr. Foster and W&S filed a joint motion for civil contempt, asserting that Appellant failed to comply with the court's April 13, 2023 order. The court conducted evidentiary hearings on the motion for contempt on April 25, 2023 and April 28, 2023.

At the contempt hearing, Attorney Moore testified that on April 15, 2023, Attorney Funari emailed the parties inquiring whether they would like to continue to negotiate the terms of the Term Sheet or proceed with the Term Sheet enforced by the court. (*See* Contempt Hearing-W&S Exhibit 4, submitted 4/25/23). An attorney for W&S replied to Attorney Funari stating that they did not intend to negotiate the Term Sheet any further and wanted to proceed with the Term Sheet enforced by the court. The email further

specified that Mr. Foster's counsel would send a Definitive Agreement by April 17, 2023. (*See id.*) On April 17, 2023, counsel for Mr. Foster sent an email with a draft of the Definitive Agreement attached. (*See* Contempt Hearing-W&S Exhibit 5, submitted 4/25/23). Attorney Moore testified that she assisted in preparing the Definitive Agreement. They attempted to draft a document that aligned as closely as possible to the Term Sheet enforced by the court with additional necessary details that were implied therein.

On April 18, 2023, an attorney for Appellant sent an email to the parties with Appellant's revised version of the Definitive Agreement. (*See* Contempt Hearing-W&S Exhibit 7, submitted 4/25/23). The email further specified that Appellant would join a request to the court for an extension of the deadline to sign a Definitive Agreement. Attorney Moore testified that Appellant's revised version removed a portion of the Definitive Agreement which specified that Appellant was required to satisfy his obligations under the agreement prior to the release of the settlement funds. Appellant added that the settlement funds would be released on April 28, 2023, removing any contingencies on the release of the funds. Attorney Moore testified that this differed materially from the Term Sheet, which specified that the settlement funds would only be paid to Appellant upon satisfaction of all of Appellant's obligations under the agreement. Appellant's version also removed portions of the Definitive Agreement that required Appellant to obtain releases for the other parties from various entities. Attorney Moore testified that this also differed

materially from the Term Sheet which specified that Appellant was obligated to obtain these releases. Appellant's version included a provision that Appellant was entitled to the return of $500,000.00 that he invested as capital contribution. Attorney Moore testified that this was not included in the Term Sheet, and the parties never discussed or agreed to such a term throughout their settlement discussions. Additionally, Appellant's version specified that any funds held by Ethos would be distributed to Appellant, changing a portion in the original draft of the Definitive Agreement which specified that any such funds would be evenly distributed to Appellant and Mr. Foster. Attorney Moore testified that this change also differed materially from what the parties agreed to in the settlement agreement.

The parties obtained an extension from the court, and on April 19, 2023 at 4:49 p.m., counsel for Mr. Foster emailed the parties with a revised version of the Definitive Agreement, which restored the terms requiring Appellant to satisfy his obligations under the agreement and obtain releases for the parties prior to distribution of the settlement funds on April 28, 2023. It further removed the additions that Attorney Moore testified were not in the Term Sheet or agreed to by the parties in the settlement agreement. (**See** Contempt Hearing-W&S Exhibit 9, submitted 4/25/23). Counsel for W&S and Mr. Shults emailed the parties on April 20, 2023 at 9:52 a.m. and 11:00 a.m., respectively, stating that they were in agreement with the version sent by counsel for Mr. Foster. (**See** Contempt Hearing-W&S Exhibit 10, submitted

4/25/23, at 2-3).  At 4:00 p.m. on April 20, 2023, after the court's deadline had passed, Attorney Funari sent an email with a revised version of the Definitive Agreement which again changed back the sections that Attorney Moore testified differed from the Term Sheet and the parties' settlement agreement.  (*Id.* at 1).

At 6:03 p.m. on April 20, 2023, Attorney Moore responded stating that she was disappointed that Appellant was continuing to negotiate terms that are not in or fairly implied by the Term Sheet enforced by the court, particularly when the court's deadline has passed.  (*See* Contempt Hearing-W&S Exhibit 11, submitted 4/25/23, at 4).  Attorney Moore requested that the parties join a call at 9:45 a.m. the following morning to attempt to resolve the dispute before the parties contact the court.  Attorney Funari responded at 7:47 p.m. defending Appellant's revisions of the Definitive Agreement. Attorney Funari further stated that he did not think a call would be productive if the other parties did not first send comments to the draft that Appellant most recently circulated.  (*Id.* at 3-4).  At 9:48 p.m., Attorney Funari sent another email stating that they would not be joining the call because the other parties had not sent their comments to the revised draft.  (*Id.* at 2-3).  At 9:03 a.m. on April 21, 2023, counsel for Mr. Foster sent another email requesting that Appellant join the call at 9:45 a.m.  The email further listed the sections of the revised draft that the parties disputed and their specific objections to those sections.  (*Id.* at 1-2).  Attorney Moore testified that

Attorney Funari did not participate in the call at 9:45 a.m. or initiate further conversation that day. Thereafter, Attorney Moore informed the court that the parties had not signed a Definitive Agreement by the court's deadline and subsequently filed the joint motion for contempt.

On cross examination, Attorney Moore acknowledged that the parties had a phone conversation on April 24, 2023, to discuss the matter and had made progress towards resolving their disputes. Following this conversation, counsel for Mr. Foster sent a revised version of the Definitive Agreement, responding to Appellant's last draft. Attorney Moore initially believed the parties had narrowed their issues during their phone conversation. Nevertheless, Attorney Funari's response to the revised version of the Definitive Agreement indicated to her that their disputes remained and court intervention was necessary. Attorney Moore further stated that although the Term Sheet did not specify any specific dates by which Appellant needed to satisfy his obligations under the agreement, all parties negotiated with the understanding that the terms of the agreement would be done before the May 1, 2023 default date for the Chase Note. Attorney Moore further stated that she believed Appellant was acting with wrongful intent in declining to sign a Definitive Agreement reflecting a settlement agreement that was reached over a month prior to the hearing.

Appellant elected not to present any witnesses at the contempt hearings. On April 28, 2023, the court issued an order finding Appellant in

civil contempt of court. The order specified that Appellant could purge the contempt by signing the Definitive Agreement that was attached as Exhibit 1[2] to the joint motion for civil contempt by May 1, 2023. Appellant signed the Definitive Agreement prior to the deadline imposed by the court.

On June 16, 2023, Mr. Foster filed a motion for attorney's fees and costs, and W&S filed a joinder in that motion. On June 20, 2023, Mr. Shults also filed a joinder in the motion for attorney's fees and costs. On July 31, 2023, Appellant filed a motion to enforce settlement. The court held a hearing on all these motions on August 22, 2023.

At the hearing, Appellees argued that they were entitled to recover attorney's fees for the enforcement and contempt proceedings based on the fee shifting provisions in the Term Sheet and the Definitive Agreement, and the court's power to impose sanctions to enforce its orders. Appellees

---

[2] The joint motion for contempt states that the exhibits would be delivered to the court but not electronically filed. (**See** Joint Motion for Contempt, filed 4/27/23, at 2). As such, the exhibits to the joint contempt motion are not in the certified record. Nevertheless, the contempt motion specifies that Exhibit 1 is the version of the Definitive Agreement that was sent by counsel for Mr. Foster on April 19, 2023 at 4:49 p.m. (**Id.**) This email and the attached version of the Definitive Agreement was submitted to the court as W&S's Exhibit 9 at the contempt hearing. (**See** Contempt Hearing-W&S Exhibit 9, submitted 4/25/23). Further, the version of the Definitive Agreement in Exhibit 9 from the contempt hearing matches the version that was subsequently signed by the parties and attached as Exhibit 1 to the motion to enforce settlement Appellant filed on July 31, 2023. (**See** Motion to Enforce Settlement - Exhibit 1, filed 7/31/23). As such, we will cite to Exhibit 1 from Appellant's motion to enforce settlement when referencing the terms of the Definitive Agreement that the court ordered the parties to sign.

presented affidavits of the fees and costs they were seeking to recover.

Regarding Appellant's motion to enforce settlement, Appellant asserted that Appellees failed to comply with the provisions of the Definitive Agreement that required Appellees to take all necessary steps to release Appellant and Mr. Starks from all loans associated with W&S. Mr. Foster testified that he had been readily working on refinancing the loans in question in order to remove Appellant and Mr. Starks as borrowers and/or guarantors. He worked with multiple financial institutions to do so but there were delays in the process. Mr. Foster began working with First National Bank ("FNB") to refinance the loan because he believed that the process would move faster with FNB. At the time of the hearing, FNB was preparing a refinance package. Mr. Foster provided FNB with all the documents that it requested, and he had not received any indication from FNB that there would be any issues with refinancing the loan. Mr. Foster testified that based on his conversations with representatives at FNB, he believed that FNB would finalize the loan very soon, which would remove Appellant and Mr. Starks from any obligations under the loans. Mr. Foster also presented an affidavit from representatives of FNB, stating that Mr. Foster and W&S had taken all necessary steps to facilitate the refinancing of the loans to release Appellant and Mr. Starks as borrowers and/or guarantors. The affidavit further stated the expectation that the refinancing would occur soon, upon the completion of due diligence conducted by FNB.

Following the hearing, the court issued orders on August 22, 2023, granting Appellees' motions for attorney's fees and costs. The court also issued an order denying Appellant's motion to enforce settlement. On September 6, 2023, Appellant filed a notice of appeal. On September 14, 2023, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on October 5, 2023.[3]

Appellant raises the following issues for our review:

Whether the trial court committed an error of law in granting the initial draft [Term Sheet] as the final settlement agreement reached by the parties?

Whether the trial court committed an error of law in enforcing the Definitive Agreement attached as Exhibit 1 (clean version) to [Mr.] Foster's motion for contempt?

Whether the trial court committed an error of law in denying [Appellant's] motion to enforce settlement agreement?

Whether the trial court abused its discretion in holding [Appellant] in civil contempt of court?

Whether the trial court abused its discretion in imposing awards of attorneys' fees and costs against [Appellant]?

_____

[3] At the time that Appellant filed his notice of appeal, final judgment had not yet been entered. On December 8, 2023, this Court directed Appellant to *praecipe* the trial court prothonotary to enter judgment. The entry of judgment was delayed pending resolution of various motions that the parties filed. On February 27, 2024, the trial court entered judgment in this matter. Appellant's premature appeal relates forward to the date of entry of judgment. **See** Pa.R.A.P. 905(a) (stating notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as filed after such entry and on day thereof).

(Appellant's Brief at 8).

Appellant's first three issues are related and we address them together. In his first two issues combined, Appellant contends that the Term Sheet the court enforced was an initial draft of the terms of a settlement that the parties were still negotiating. Appellant asserts that parties were still circulating drafts of the Term Sheet at the time when the court held the enforcement hearing, demonstrating that material terms of the settlement agreement were still under negotiation. Appellant claims that Attorney Moore acknowledged during her testimony at the enforcement hearing that the issue of when the Chase Note would be paid off was still in dispute between the parties. Appellant further claims that the mere fact that the parties reported to the court that they had reached a settlement agreement was not dispositive as to whether the parties reached an agreement, particularly when there was evidence that significant disputes regarding the agreement remained. Appellant maintains that he did not consent to the material terms outlined in the Term Sheet and as such, the court's decision to enforce the Term Sheet was erroneous. Likewise, Appellant insists that the court's order mandating the parties to sign a Definitive Agreement pursuant to the terms of the Term Sheet to which Appellant did not consent was also improper.

In his third issue, Appellant asserts that the Definitive Agreement that the court mandated the parties to sign required Appellees to release Appellant and Mr. Starks as borrowers and/or guarantors from any loans of financial

obligations associated with W&S. Appellant claims that although he fulfilled his obligations under the Definitive Agreement, Appellees failed to obtain releases for Appellant and Mr. Starks. Appellant asserts that the court erred in concluding that Appellees had satisfied their obligations under the Definitive Agreement. Appellant concludes that the court committed errors of law when it enforced the Term Sheet, ordered the parties to sign a Definitive Agreement, and subsequently denied Appellant's request to enforce the terms of that Definitive Agreement. We disagree.

"Our standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law." *Casey v. GAF Corp*., 828 A.2d 362, 367 (Pa.Super. 2003), *appeal denied*, 577 Pa. 684, 844 A.2d 550 (2004). While we are free to draw our own inferences and reach our own conclusions from the court's factual findings, we are bound by those findings of fact when competent evidence exists to support them. *Id.*

Regarding the enforceability of a settlement agreement, this Court has previously stated:

> The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. Settlement agreements are enforced according to principles of contract law. There is an offer (the settlement figure), acceptance,

and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum).

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. *Mazzella v. Koken*, 559 Pa. 216, 221, 739 A.2d 531 536 (1999); *see Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 147 (Pa.Super.2006) (stating "an agreement is binding if the parties come to a meeting of the minds on all essential terms, even if they expect the agreement to be reduced to writing but that formality does not take place."). Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. However, once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such.

*Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa.Super. 2009), *appeal denied*, 605 Pa. 715, 991 A.2d 313 (2010) (some citations and quotation marks omitted).

Additionally:

Given the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable.

When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact… We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law.

In reviewing such finding, we are mindful that

> [i]t is understandable [that] when, after a prolonged period of negotiations, parties appear to reach agreement on the essential terms of an important transaction, one of them might believe that a contract had been made. However, before preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain.
>
> *Essner v. Shoemaker*, 393 Pa. 422, 425, 143 A.2d 364, 366 (1958). If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

*Mazzella v. Koken*, 559 Pa. 216, 225, 739 A.2d 531, 536–37 (1999) (some citations and quotation marks omitted). Further, where the parties have entered into an oral agreement, subsequent negotiations between the parties offered to obtain the signature of a recalcitrant party to a written agreement, does not negate the enforceability of the oral agreement where there is no evidence that the parties agreed to discharge their obligations pursuant to the oral agreement. *See Johnston v. Johnston*, 499 A.2d 1074, 1077 (Pa.Super. 1985).

Notably:

> In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties. If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties. If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper.

> A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

***Commonwealth by Shapiro v. UPMC***, 652 Pa. 322, 341-42, 208 A.3d 898, 909-10 (2019) (citations and quotation marks omitted).

Instantly, the parties came before the court at the enforcement hearing, disputing whether they had entered into a settlement agreement and the specific terms of any such agreement. Following an evidentiary hearing, the court, as the factfinder, determined that the parties entered into an enforceable oral settlement agreement on March 24, 2023, and the terms of that settlement agreement were memorialized in the Term Sheet that the court enforced. The record supports the court's findings. ***See Mazzella, supra***. The only evidence presented to the court regarding the settlement discussions and its outcome was Attorney Moore's testimony and the exhibits of various email conversations between the parties. Attorney Moore testified that the parties reached a settlement agreement on March 24, 2023, after three days of settlement discussions. Attorney Moore's testimony was supported by an email sent by Attorney Funari, confirming that the parties had reached a settlement agreement and the terms of that agreement would be set forth in a Term Sheet. Attorney Moore, who assisted in drafting the initial Term Sheet, testified that the initial Term Sheet reflected the terms that the parties had agreed to during the settlement negotiations. She further went through each term in the initial Term Sheet and affirmed that Appellant

had agreed to each term at the settlement negotiation. Appellant did not present any evidence to refute Attorney Moore's testimony.

Although Appellant presented emails where Attorney Funari sent revised versions of the Term Sheet with different terms, Attorney Moore consistently testified that the initial Term Sheet accurately reflected the terms that were agreed upon by the parties at the settlement negotiation. Attorney Moore acknowledged that unresolved disputes remained between the parties regarding the timing of the payment of the Chase Note. Nevertheless, she testified that these disputes arose after Attorney Funari sent a revised version of the Term Sheet, attempting to include additional terms that were not agreed upon by the parties at the settlement negotiations. Again, Appellant did not present any evidence to refute Attorney Moore's testimony, and the court credited her testimony.

On this record, we cannot say the court erred in concluding that the parties entered into an enforceable oral settlement agreement on March 24, 2023, as reflected in the initial Term Sheet. **See Casey, supra**. The court's conclusion is supported by Attorney Funari's own email acknowledging that the parties reached an agreement on March 24, 2023, and Attorney Moore's unrefuted testimony as to the terms of that agreement. **See Mazzella, supra**. Additionally, the fact that there was evidence that the parties continued to negotiate the terms of the Term Sheet to resolve subsequent disputes that arose, does not negate Attorney Moore's testimony that the

parties agreed to the terms in the initial Term Sheet on March 24, 2023.  *See Johnston, supra*.

Upon finding that the initial Term Sheet accurately reflected the settlement agreement entered into by the parties, the court entered an order to enforce the terms of the agreement.  The Term Sheet required that the parties enter into a Definitive Agreement.  It further specified that the Definitive Agreement would incorporate the terms in the Term Sheet and those terms would not be subject to further negotiation during the preparation of the Definitive Agreement.  Additionally, Attorney Moore testified that the parties entered into the settlement agreement with the understanding that the terms would be executed prior to the May 1, 2023 default deadline for the Chase Note.  As such, the court ordered the parties to sign a Definitive Agreement by April 18, 2023.  Based on the language of the Term Sheet and Attorney Moore's unrefuted testimony regarding the agreed upon timeline, we cannot say the court erred in its April 13, 2023 order enforcing the settlement agreement and directing the parties to sign a Definitive Agreement by April 18, 2023.  *See Commonwealth by Shapiro, supra*; *Casey, supra*.

Regarding Appellant's motion to enforce settlement, the court found that Appellees had complied with all material terms of the Definitive Agreement.  Specifically, the Definitive Agreement required that Appellees "shall take all necessary steps to ensure the release of [Appellant] and [Mr.] Starks, as borrowers or personal guarantors, from any promissory note, loan, mortgage,

debenture, debt, or other obligation" that is associated with W&S. (Motion to Enforce Settlement - Exhibit 1, filed 7/31/23, at 10). At the August 22, 2023 hearing, Mr. Foster testified that he worked with multiple financial institutions to refinance the loans in question to remove Appellant and Mr. Starks from the loans as quickly as possible. Appellees further presented an affidavit from representatives of FNB, which stated that Appellees had taken all necessary steps to facilitate the release of Appellant and Mr. Starks from these loans. It further stated that the loans would be refinanced soon, upon completion of FNB's due diligence review. The court credited Mr. Foster's testimony. On this record, we cannot say the court erred in concluding that Appellees complied with the term in the Definitive Agreement requiring them to "take all necessary steps" to obtain the release of Appellant and Mr. Starks from loans associated with W&S. **See Casey, supra**. As such, Appellant is not entitled to relief on his first three issues on appeal.

In his fourth issue, Appellant contends that he did not violate the specific terms of the court's April 13, 2023 order by failing to sign the Definitive Agreement because it varied from the Term Sheet enforced by the court. Specifically, Appellant claims that the Definitive Agreement required Appellant to perform numerous obligations by April 28, 2023 even though the Term Sheet did not contain any specific dates by which Appellant was required to perform any obligations. Additionally, Appellant asserts that the Definitive Agreement provided that Appellant would forfeit the settlement payment if he

failed to satisfy any material term of the Definitive Agreement, which was also a term that was not included in the Term Sheet. Appellant argues that the court could not order Appellant, under penalty of contempt, to sign a Definitive Agreement that differed materially from the Term Sheet, which the court found contained the terms of the parties' agreement. Appellant further asserts that even if Appellant's conduct constituted a violation of the court's April 13, 2023 order, Appellees presented no evidence that Appellant acted with wrongful intent. Appellant claims that the record shows that he attempted, in good faith, to comply with the court's order by working with Appellees to draft a Definitive Order that aligned with the Term Sheet. Appellant concludes that the court erred in finding Appellant in civil contempt of court for violating the court's April 13, 2023 order, and this Court must grant relief. We disagree.

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial [court] when reviewing an order of contempt." *Rogowski v. Kirven*, 291 A.3d 50, 57 (Pa.Super. 2023) (internal citation and quotation marks omitted).

"To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence." *Id.* (quoting *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa.Super. 2017)).

> Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he[, or she,] is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* (quoting **J.M., supra** at 1264).

"[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." **Habjan v. Habjan**, 73 A.3d 630, 637 (Pa.Super. 2013) (quoting **Lachat v. Hinchcliffe**, 769 A.2d 481, 488 (Pa.Super. 2001)).

> [W]hen making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his actions will violate the court order.

**Gross v. Mintz**, 284 A.3d 479, 492-93 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 293 A.3d 563 (2023) (quoting **Commonwealth v. Reese**, 156 A.3d 1250, 1258 (Pa.Super. 2017)).

Regarding contempt orders to enforce a settlement agreement, this court has stated that the trial court "may … upon petition of one party, utilize the powers of contempt against a party who unreasonably attempts to thwart the fulfillment of [a] settlement agreement, if the agreement has been incorporated into a court order." **Century Inn, Inc. v. Century Inn Realty, Inc.**, 516 A.2d 765, 769 (Pa.Super. 1986). "The court may not, however, order the parties to execute the court's own agreement, or face a contempt citation, where that [written] agreement differs from the terms of the

settlement." ***Id.*** A trial court may not, under penalty of contempt, require appellants to sign a different agreement than what was agreed upon by the parties. ***Johnston, supra*** at 1087.

Here, the court's April 13, 2023 order specified that it found that the terms of the agreement between the parties were set forth in the initial Term Sheet. It further ordered the parties to sign a Definitive Agreement, as required in the Term Sheet, by April 18, 2023. At the end of the hearing on April 11, 2023, the court informed the parties that they were free to continue to negotiate the specific language of the Definitive Agreement but should not continue to negotiate any changes to the material terms in the Term Sheet.

Appellant argues that he did not violate the court's order by failing to sign the Definitive Agreement proffered by Appellees because the material terms in the Definitive Agreement differed from the material terms in the Term Sheet. Nevertheless, the record belies Appellant's claim. Specifically, Appellant claims that the Term Sheet did not specify any dates by which Appellant must satisfy his obligations under the agreement. However, the Term Sheet states that the settlement payment shall be delivered to Appellant within ten days of the execution of the Definitive Agreement. It further specifies that the settlement payment would only be paid upon the satisfaction of all of Appellant's obligations under the agreement. As such, although the Term Sheet does not list specific dates, it sufficiently sets forth that Appellant should meet his obligations under the agreement within ten days of the

execution of the Definitive Agreement. The Definitive Agreement that the court required Appellant to sign to purge his contempt states that the effective date of the agreement is April 18, 2023, and specifies that Appellant must meet his obligations under the agreement by April 28, 2023. (**See** Motion to Enforce Settlement - Exhibit 1, filed 7/31/23, at 1, 6-9). This term is not materially different from the Term Sheet as Appellant claims. Rather, it merely assigns specific dates to the timeline that was already set forth in the Term Sheet.

Additionally, Appellant claims that the Term Sheet did not contain any provisions that stated that Appellant would "lose entitlement to the release of the settlement payment" if he failed to satisfy any material term of the Definitive Agreement. (**See id.** at 7). Contrary to Appellant's claim, the Term Sheet specifies that the settlement payment would only be paid upon Appellant's satisfaction of all his obligations under the agreement. While the specific language in the Definitive Agreement varies slightly, we cannot say the term in the Definitive Agreement is substantively different from the Term Sheet. As such, Appellant's claim that he did not violate the court's order because the Definitive Agreement was materially different from the Term Sheet lacks merit. **See Century Inn, Inc., supra**; **Johnston, supra**.

Appellant further asserts that there was no evidence for the court to find that Appellant intentionally violated the court order or acted with wrongful intent. The court found that Appellant did not act in good faith to abide by

the court's order to sign a Definitive Agreement that reflected the terms set forth in the Term Sheet. At the contempt hearing, Attorney Moore testified that Appellant was sent a Definitive Agreement that aligned as closely as possible with the Term Sheet enforced by the court. In response, Attorney Funari sent a revised version with several material changes and additional terms that were not included in the Term Sheet. Specifically, the revised version mandated that the settlement funds should be paid to Appellant without any conditions that Appellant must first satisfy his obligations under the agreement. This directly contradicts the Term Sheet which specified that Appellant must satisfy his obligations first. Appellant's revised version also contained a new term stating that Appellant was entitled to the return of $500,000.00 that he invested as capital contribution. This provision was not included in the Term Sheet and Attorney Moore testified that the parties had never discussed such a term before it was included in Appellant's revisions. The revised version also changed how the Ethos funds would be distributed between the parties, which Attorney Moore testified differed from the agreement between the parties.

Attorney Moore testified that Appellant continued to insist on the inclusion of the terms that differed materially from the Term Sheet, even when the court's deadline was imminent. She further testified that Attorney Funari refused to join a call with the other parties to attempt to resolve the differences prior the court's deadline. Attorney Moore testified that she

believed Appellant was acting with wrongful intent at this point in the process. She noted that the parties had reached a settlement agreement on March 24, 2023, and Appellant repeatedly tried to renegotiate the terms of that agreement in complete disregard of the court order. Appellant did not present any evidence to refute Attorney Moore's testimony.

The record makes clear that the court ordered the parties to sign a Definitive Agreement that reflected the terms in the Term Sheet. Appellant does not offer any argument that the changed terms in Appellant's revisions of the Definitive Agreement were contained in or fairly contemplated by the Term Sheet. Our review of the relevant documents confirms that they are materially different. Nevertheless, Appellant continued to insist on these additional terms in violation of the court's order, even when the court's deadline was imminent and/or had passed. As previously discussed, the terms that Appellant objected to in the Definitive Agreement aligned with the terms in the Term Sheet. As such, in consideration of the full context of this case, there was sufficient evidence for the court to find that Appellant's actions were volitional, and Appellant acted with wrongful intent to renegotiate better terms than what was agreed upon by the parties. ***See Gross, supra***. On this record, we cannot say the court abused its discretion in finding Appellant in contempt.[4] ***See Rogowski, supra***.

_____

[4] Appellant does not dispute that he had notice of the court's order.

In his fifth issue, Appellant argues that the fee shifting provision in the Term Sheet only applies to an "action or suit" brought related to a "breach" of the Term Sheet. Appellant asserts that the proceedings in this case for which Appellees sought attorney's fees and costs cannot be considered an action or suit brought because of a breach of the agreement. Rather, Appellant contends that Appellees sought enforcement of the Term Sheet, which is not contemplated in the fee shifting provision. Appellant further asserts that there was no final judgment rendered where Appellees were the substantially prevailing party. Appellant concludes that the court erred in granting Appellees' motions for attorney's fees and costs on these grounds. We disagree.

"Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." *Thunberg v. Strause*, 545 Pa. 607, 614-15, 682 A.2d 295, 299 (1996).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. Review of the grant of counsel fees is limited ... and we will reverse only upon a showing of plain error.

*Habjan v. Habjan*, 73 A.3d 630, 642 (Pa.Super. 2013) (internal quotation marks, citations, and brackets omitted). "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party

unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." ***Trizechahn Gateway LLC v. Titus***, 601 Pa. 637, 652, 976 A.2d 474, 482-483 (2009). ***See also McMullen v. Kutz***, 603 Pa. 602, 613-15, 985 A.2d 769, 776-77 (2009) (explaining that "parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case").

In interpreting a fee shifting provision in a contract, this Court has stated "[w]hen terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." ***Profit Wize Marketing v. Wiest***, 812 A.2d 1270, 1274 (Pa.Super. 2002). "As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used." ***Id.*** at 1274-75.

Here, the court found that Appellant entered into a settlement agreement on March 24, 2023. The court additionally found that the terms of that settlement agreement were contained in the initial Term Sheet, which contained a fee shifting provision which stated that if a party "brings an action or suit against any other party by reason of any breach or alleged breach of … this agreement, then … the substantially prevailing party as reflected in a final judgment shall be entitled to … recover from the other party … all costs and expenses of suit, including reasonable attorney's fees." (Settlement

Enforcement Hearing - W&S Exhibit 5, submitted 4/11/23, at 7). As such, pursuant to the fee shifting provision, the court found Appellees were entitled to the attorney's fees and costs associated with the actions Appellees brought to enforce the terms of the agreement.

Although the Term Sheet does not define "action or suit," the court noted that Black's Law Dictionary defines an "action" as a "civil or criminal judicial proceeding." Black's Law Dictionary (12th ed. 2024). It further specifies that an "action in the sense of a judicial proceeding includes … any … proceedings in which rights are determined." *Id.* As such, the court found that the proceedings that occurred to enforce the settlement agreement in this case fell within this definition.

The court further explained:

> [The actions for which the court granted attorneys' fees] were brought because of [Appellant's] refusal to sign a Term Sheet as agreed upon during the initial March settlement agreement, followed by the court's necessary intervention to enforce said agreement and the subsequent breaches of that Term Sheet (*i.e.* not signing a [Definitive Agreement] as required by the Term Sheet, and all actions that stemmed from that breach of the Term Sheet).
>
> In all of those actions, [Mr.] Foster, W&S, and [Mr.] Shults were the substantially prevailing parties, and as such, the fee-shifting provision of the [Term Sheet] allowed for [the] court to grant attorneys' fees and costs.

(Trial Court Opinion, filed 1/16/25, at 26). Notably, Appellant cites no relevant authority to support his claim that the proceedings in this case do not

- 34 -

constitute an "action or suit" as contemplated in the fee shifting provision.[5] On this record, we cannot say that the court erred in its interpretation of the terms "action or suit." ***See Profit Wize Marketing, supra***.

Appellees sought court intervention to enforce the settlement agreement because Appellant breached the terms of the parties' agreement by failing to sign a Term Sheet and a Definitive Agreement. Appellant also breached the terms of the parties' agreement by continuing to negotiate the terms, which was specifically prohibited by the Term Sheet. On this record, we cannot say that the court palpably abused its discretion in its award of attorney's fees and costs to Appellees. ***See Thunberg, supra***. Accordingly, Appellant is not entitled to relief on any of his issues on appeal and we affirm the judgment.

Judgment affirmed.

---

[5] To support his claim, Appellant cites only to ***Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare***, 299 A.3d 937 (Pa.Super. 2023). Nevertheless, ***Riverview Carpet & Flooring, Inc.*** merely notes that the appellant in that case did not advance any argument as to how the court should interpret the term "action" included in a fee shifting provision. It does not provide any support for Appellant's claim that the "action" as stated in the fee shifting provision in the Term Sheet does not apply to the proceedings in this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/11/2026